Shirley A. LOJESKI

v.

Richard BOANDL, et al.

Civ. A. No. 84–3591.

United States District Court,
E.D. Pennsylvania.

Nov. 15, 1984.
On The Merits Jan. 23, 1985.

John R. Crayton, Bensalem, Pa., for plaintiff.

Melody Moss, Tax Division, Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

WEINER, District Judge.

Presently before the court is the motion of defendants, all of whom are employees of the United States, Department of the Treasury, Internal Revenue Service (IRS), to dismiss, pursuant to Fed.R.Civ.P. 12(b)(5) and 12(b)(6) the complaint on the grounds that this court lacks jurisdiction over the defendants. In the alternative, defendants move for summary judgment pursuant to Fed.R.Civ.P. 56 on the grounds that there are no material issues of fact and that this court lacks jurisdiction over the defendants. For the reasons which follow the motions are denied.

Plaintiff Lojeski currently resides with a Thomas L. Treadway at plaintiff's residence in Pipersville, Pennsylvania. Between 1979 and August 2, 1982, defendant Richard Boandl, a Revenue Agent in the Philadelphia District of the Internal Revenue Service, audited the 1977, 1978, 1979 and 1980 personal income tax returns of Mr. Treadway. Prior to August 2, 1982, defendant Boandl made a determination that Mr. Treadway had a personal income tax liability of $157,561.75, inclusive of penalties and interest, for the years 1977, 1978, 1979, and 1980. At the same time, defendant Boandl further determined that Mr. Treadway was attempting to place his property beyond the reach of the government, either through transfers or by dissipating it. On the basis of these determinations, defendant Boandl recommended that a jeopardy assessment be made against Mr. Treadway in the amount of $157,561.75 pursuant to Section 6861 of the Internal Revenue Code. On August 2, 1982 defendant Boandl also recommended that a termination assessment be made against Mr. Treadway in the amount of $90,330.00 pursuant to Section 6851 of the Internal Revenue Code. The recommended assessments were approved by defendants Larry Rosenblum (Group Manager in the Examination

Division, Philadelphia District of IRS), Theodore J. Machowski (Reviewer in the Philadelphia District of IRS), Carl Weiss (Chief of Quality Review Staff, Philadelphia District of IRS), Robert Hilgen (Chief of Examination Division, Philadelphia District of IRS), George Jessup (Revenue Officer, Philadelphia District of IRS), Raymond Pfeiffer (Group Manager in the Collection Division), Jennings West (Chief of Collection Division, Philadelphia District of IRS), Thomas Wise (Chief of Criminal Investigation Division, Philadelphia District of IRS) and James T. Rideoutte (District Director in Philadelphia District of IRS).

On August 2, 1982, defendant Boandl recommended that an identical assessment be made against plaintiff Lojeski in the amount of $247,891.57. Again the recommendation was approved by all of the remaining defendants, and on August 2, 1982, defendant Jessup seized the personal assets of plaintiff Lojeski by filing a nominee lien against her real property in the amount of $247,891.57, and by levying against her bank accounts in the amount of $247,891.57.

In a letter dated August 30, 1982 to the Appeals Office of the IRS, Mr. Treadway protested the termination assessment against him in the amount of $90,330.00 for the period January 1, 1982 through June 4, 1982, and the jeopardy assessments for the years 1977, 1978, 1979 and 1980 totaling $157,567.75. The Appeals Office made a determination that, "under the circumstances existing at the time of the administrative review, the termination and jeopardy assessments are not reasonable." It recommended that the jeopardy and termination assessments against Mr. Treadway be abated in full, the liens and levies released, and the refunds processed.

Plaintiff Lojeski filed this complaint on July 25, 1984, claiming violations of her constitutional rights pursuant to the Fourth Amendment (unreasonable seizure of her property), the Fifth Amendment (deprivation of property without due process of law and defendants' actions were gender based). She seeks compensatory and punitive damages in an amount in excess of $50,000.00, prejudgment interest, costs and attorney's fees.

For purposes of a Motion to Dismiss under Fed.R.Civ.P. 12(b)(6) the Complaint must be construed in the light most favorable to the plaintiff and each of the allegations must be taken as true. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Braden v. University of Pittsburgh*, 552 F.2d 948 (3rd Cir.1977). A Motion to Dismiss is viewed with disfavor and should only be granted when it is clear that the pleadings do not establish a cause of action. *Sosa v. Coleman*, 646 F.2d 991 (5th Cir.1981); *Swartz v. Eberly*, 212 F.Supp. 32 (E.D.Pa.1962).

Defendants first argue that they are immune from suit under the doctrine of sovereign immunity. As a sovereign, the United States cannot be sued without its consent. *United States v. Shaw*, 309 U.S. 495, 500–501, 60 S.Ct. 659, 661–662, 84 L.Ed. 888 (1940); *Hutchinson v. United States*, 677 F.2d 1322 (9th Cir.1982). However, plaintiff Lojeski has brought suit against agents of the IRS in their individual capacity and not against the IRS or the United States. Specifically, plaintiff has brought constitutional claims under the Fourth and Fifth Amendments against certain federal government officials and thus may be entitled to recover damages against them under the judicially created tort established by *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Although *Bivens* dealt with a violation of the Fourth Amendment, the Supreme Court has expanded the remedy to include a violation of the Fifth Amendment as well. *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). A "Bivens" claim may be alleged against agents and employees of the IRS. *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977). Therefore, defendants' reliance on the sovereign immunity doctrine is misplaced.

Defendants next argue that they are entitled to the qualified immunity de-

fense established by the Supreme Court in *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). As officers of the executive branch, defendants can fall within the qualified immunity defense of *Scheuer* if they can show that their actions were executed reasonably and in good faith. *Thompson v. Burke*, 556 F.2d 231, 239 (3rd Cir.1977). However, it is the law of this circuit that the qualified immunity defense cannot be determined on a Fed.R. Civ.P. 12(b)(6) motion. *Thompson, supra; Fidtler v. Rundle*, 497 F.2d 794 (3rd Cir. 1974); *Safeguard Mutual Insurance Co. v. Miller*, 472 F.2d 732 (3rd Cir.1973). Therefore, defendants' 12(b)(6) motion must be denied.

■ Defendants next argue that this court does not have jurisdiction pursuant to 28 U.S.C. § 1331. Where a complaint seeks recovery directly under the Constitution or federal laws, federal jurisdiction is established pursuant to § 1331. *Bell v. Hood*, 327 U.S. 678, 681–682, 66 S.Ct. 773, 775–776, 90 L.Ed. 939 (1946). Defendants claim, however, that if a claim is found to be "wholly insubstantial and frivolous," a suit under § 1331 may be dismissed for want of jurisdiction. *Bell, supra*. The test for frivolity is whether the claim is "so insubstantial, implausible, foreclosed by prior decisions of the court, or otherwise completely devoid of merit as not to involve a federal controversy." *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666, 94 S.Ct. 772, 776, 39 L.Ed.2d 73 (1974); quoted in *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 70–71, 98 S.Ct. 2620, 2628–2629, 57 L.Ed.2d 595 (1978). The question is whether "the cause of action alleged is so patently without merit as to justify the court's dismissal for want of jurisdiction." *Duke Power Co., supra*.

■ In the case *sub judice*, there is absolutely no evidence other than defendants' personal affidavits that defendants acted reasonably and in good faith when they executed a nominee lien against plaintiff Lojeski. The agents rationalized their actions merely on the basis that plaintiff

Lojeski's residence and bank accounts *appeared* to be nothing more than a fraudulent transferral undertaken by taxpayer Treadway to avoid attachments for taxes owed. As has already been shown, the Appeals Office of the IRS determined that the defendants' action in executing termination and jeopardy assessments against Mr. Treadway was not reasonable. Specifically, the real estate sales in 1982 were not shown to have been made for the purpose of hiding the sales proceeds; they were transacted in the normal manner with the involvement of realtors and banks; Mr. Treadway furnished details as to the disposition of the proceeds, and similar sales were made by Mr. Treadway throughout the period under audit. Based on this information it can hardly be maintained that plaintiff Lojeski's claim is devoid of merit. " '[W]here federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief.' *Bell v. Hood, supra*, 327 U.S. at 684, 66 S.Ct. at 776 (footnote omitted); *see Bemis Bros. Bag Co. v. United States*, 289 U.S. 28, 36, 53 S.Ct. 454, 457, 77 L.Ed. 1011 (1933) (Cardozo, J.); *The Western Maid*, 257 U.S. 419, 433, 42 S.Ct. 159, 161, 66 L.Ed. 299 (1922) (Holmes, J.)." Thus, this court has jurisdiction under 28 U.S.C. § 1331.

■ Finally, defendants claim that they have not unlawfully discriminated against plaintiff Lojeski on the basis of her sex. We conclude that there is merit to this claim. There is absolutely no evidence to support an allegation that the actions taken by the IRS constitute discrimination against plaintiff based on her gender.

In the alternative, defendants move for summary judgment pursuant to Fed.R. Civ.P. 56. To prevail upon a motion for summary judgment the moving party must conclusively demonstrate to the court's satisfaction that there exists no genuine issues as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Majors Furniture Mart, Inc. v. Castle Credit*

*Corp., Inc.,* 602 F.2d 538, 539 (3rd Cir. 1979); *Drexel v. Union Prescription Centers, Inc.,* 582 F.2d 781, 784 (3rd Cir.1978). We must view the evidence in the light most favorable to the party opposing the motion. *Bishop v. Wood,* 426 U.S. 341, 347 n. 11, 96 S.Ct. 2074, 2079 n. 11, 48 L.Ed.2d 684 (1976); *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Drexel v. Union Prescription Centers, Inc., supra* at 784.

■ In the case *sub judice,* there exists a genuine issue as to whether defendants acted reasonably and in good faith when they seized the personal assets of plaintiff Lojeski by filing a lien against her real property in the amount of $247,891.57 and levying against her bank accounts in the amount of $247,891.57. *See Thompson, supra.* In his affidavit, defendant Boandl stated that the jeopardy assessment against Mr. Treadway was executed on reasonable grounds because Mr. Treadway "was apparently attempting to avoid his due and owing tax liabilities, through the sale and transfer of his assets." In another affidavit, defendant Jessup stated that the lien be filed and a levy be served against any assets of plaintiff Lojeski "because of Mr. Treadway's apparent attempts to remove assets from the reach of creditors and the discovery of the existence of a bank account in plaintiff's name with Mr. Treadway's social security number." Plaintiff Lojeski refers to the decision of the Appeals Office of the IRS in alleging that defendants acted unreasonably and in bad faith. Thus, as certain issues of material fact exist as to whether defendants acted reasonably and in good faith, and because we have already held that this court has jurisdiction under 28 U.S.C. § 1331, defendants' motion for summary judgment is denied.

## ON THE MERITS

Plaintiff brought this action against agents of the Internal Revenue Service in their individual capacity for alleged violations of the rights afforded her under the United States Constitution. By agreement of the parties, all of the defendants except Richard Boandl, Larry Rosenblum, George Jessup, Raymond J. Pfeiffer and James T. Rideoutte were dismissed out of the case. The case was tried to the court sitting without a jury.

The witnesses called by the plaintiff were Richard Boandl, Larry A. Rosenblum, Harry Joseph Schmidt, Thomas L. Treadway, Thomas Wise, John Peraccio, George Jessup, Shirley Ann Lojeski, Paul Sweterlitsch, Reed Denby, and Jennings L. West. The government called Ray Pfeiffer as its witness.

The facts of the case may be summarized as follows:

Plaintiff and a Thomas Treadway are companions and very best friends. Since 1980, Mr. Treadway has lived with the plaintiff on her farm in Pipersville, Pennsylvania. In December 1979, Agent Boandl was assigned to examine the 1977 tax return of Mr. Treadway. He subsequently examined the 1978, 1979 and 1980 tax returns of Mr. Treadway. In February 1982, Agent Boandl came to a final assessment against Mr. Treadway of approximately $247,000.00. Mr. Treadway did not agree to the assessment against him. Agent Boandl discussed the matter with his manager Agent Rosenblum, and they decided on a jeopardy assessment against Mr. Treadway because they were concerned that Mr. Treadway was selling his properties, and that the plaintiff was putting the funds from the sales into her personal bank accounts. Agents Boandl and Rosenblum recommended to their supervisors that the assessment be approved without informing the supervisors that they intended to take collection action against the plaintiff.

Agent Boandl testified that he never checked the grantor index nor the mortgage books in Doylestown, nor did he know what funds Treadway received from the sale of his two properties in March and June 1982. He also testified that he knew that Mr. Treadway had borrowed between $150,000.00 and $180,000.00 from El Paso, Inc.

On or about August 3, 1982, Agent Jessup filed a nominee lien against the plaintiff in the amount of approximately $247,000.00, and he seized plaintiff's bank accounts. Agent Jessup testified that he obtained no approval from his superior before filing the nominee lien. Prior to the seizure of plaintiff's property, no notice was given to her of the proposed action.

On September 23, 1982, an Internal Revenue Service appeals officer, John Percaccio, after conducting an administrative review, determined that the assessment against Mr. Treadway was not reasonable, and a letter was sent abating the assessment (see Plaintiff's Exhibit No. 11). Agents Boandl and Jessup attempted, without success, to have the decision of the appeals officer reversed.

The lien on plaintiff's farm was not released until November 30, 1982, and the seized funds not returned until January 1983. Agent Jessup testified that the delay was due to the lateness in his obtaining the abatement report, and for the manual cutting of checks for plaintiff. He excused it by stating "She got interest back on the moneys we had taken."

The plaintiff testified that she was a horse breeder and owned the farm in Pipersville which was attached by Jessup. After the lien was filed by Jessup, the plaintiff was threatened with foreclosure by banks which held mortgages on her farm. She couldn't run her horse business, had to borrow money to eat and pay the mortgages. She stated that she was humiliated, degraded, withdrawn and did not leave the farm because she was afraid that Jessup would come back and take something. She also testified that she lost two prospective purchasers of her farm because of the lien.

■■■ To prevail in this action the burden is on the plaintiff to prove by a preponderance of the evidence that the Internal Revenue personnel, defendants in this action, violated plaintiff's constitutional rights. The court must determine whether the individual defendants had a reasonable ground for belief and a good faith belief that their actions were fully in accordance with the law and regulations. *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). "Qualified or 'good faith' immunity is an affirmative defense that must be pleaded by a defendant official." *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982), citing *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). The "good faith" immunity is defeated if the official knew or reasonably should have known that his action would violate the plaintiff's constitutional rights, or "if he took the action *with the malicious intention* to cause a deprivation of constitutional rights or other injury." *Harlow*, 457 U.S. at 815, 102 S.Ct. at 2737, citing *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975). Government officials performing discretionary functions are generally shielded from civil damages liability when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. Federal courts have the power to award damages for violation of constitutionally protected interests. *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 399, 91 S.Ct. 1999, 2006, 29 L.Ed.2d 619 (1971).

■■■ We find that the plaintiff has sustained her burden of proving that her constitutional rights were violated by defendants Boandl and Jessup. The seizure of plaintiff's bank accounts, and the lien placed against her real property were unreasonable and in violation of her rights under the Fourth Amendment. The seizure of plaintiff's bank accounts and lien placed against her real property were made without due process of law and in violation of the Fifth Amendment.

We must now determine whether the defendants Boandl and Jessup satisfied their burden of proving the affirmative defense of "good faith" immunity. We find that they have failed to satisfy their burden. Their testimony failed to show that they had a reasonable ground for belief and a good faith belief that their actions were

fully in accordance with the law and regulations. Internal Revenue Service regulations provide that extreme caution must be taken before filing a nominee lien. Neither Boandl nor Jessup used any caution. They acted on their own without obtaining approval from superiors. Their actions and tactics were certainly not in keeping with the rules and regulations of the Internal Revenue Service. Jessup repeatedly testified that he didn't need authority from any superior to do what he did, and that he alone could make the determination. We find, therefore, that the plaintiff is entitled to an award of actual or compensatory damages.

We must now consider the elements of damages claimed by the plaintiff. She testified that the placing of the lien on her real property prevented her from selling the property, with resultant damage to her. We do not agree with that contention. The worst that would have happened if she sold the property would have been that title company would have withheld from the proceeds due her, the amount of the lien. The purchaser could have obtained clear title. Thus, we refuse that element of damage.

However, based on the uncontradicted testimony by the plaintiff, we find that the plaintiff's constitutional rights were violated by the defendants Boandl and Jessup, and that plaintiff was injured as follows:

1. She lost two insurance policies, a health and life policy, because she did not have the funds to pay the premium.

2. She was threatened with foreclosure of her real estate because she didn't have the funds to make her mortgage payment.

3. She couldn't run her horse business because of the lack of funds to buy feed and other items.

4. She was sued by one supplier because she did not have the funds to pay her bill.

5. She had to borrow money for food and to pay her mortgage.

6. She was humiliated, degraded and withdrawn.

7. She didn't leave the farm because she was ashamed to meet people, and for fear that Jessup would come back to the farm and remove her personal property.

The matter of resolving the amount of a damage award is always a troublesome problem since there is no precise formula for calculating damages. We must arrive at a figure which is based upon considerations of equity, reason and pragmatism. *Mack v. Johnson*, 430 F.Supp. 1139, 1151 (E.D.Pa.1977), aff'd. 582 F.2d 1275 (3d Cir. 1978).

Some courts have awarded prisoners the sum of $25.00 per day for each day of wrongful segregated confinement. *Id.; United States ex rel Neal v. Wolfe*, 346 F.Supp. 569 (E.D.Pa.1972); *Sostre v. Rockefeller*, 312 F.Supp. 863 (S.D.N.Y.1970), rev'd in part, *sub nom.*, 442 F.2d 178 (2d Cir.1971), *cert. denied*, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972). In those cases, the plaintiffs were already incarcerated, but were awarded damages for wrongful segregated confinement.

In the case *sub judice*, the plaintiff, prior to the levy, had free access to her bank accounts, and freedom to do what she wished with her real property. She had freedom of movement. The levy against her real property lasted approximately 118 days (from August 3, 1982 until November 30, 1982), and the money in her bank accounts was unavailable to her for approximately 150 days (from August 3, 1982 until the beginning of January 1983). Thus the plaintiff was deprived of her funds and/or her property for a total of 268 days. During that time she suffered from humiliation and degradation. Since the courts have approved a finding of $25.00 per day for an already incarcerated person whose constitutional rights are violated, we find that the sum of $250.00 per day is a reasonable per diem amount for a person of the plaintiff's standing in life at the time of the violation of her rights by defendants Boandl and Jessup.

We, therefore, award the plaintiff the sum of $67,000.00 (268 days at $250.00 per

day) as compensatory damages for the injuries which she suffered because of the conduct of defendants Boandl and Jessup.

The plaintiff has requested that she be awarded punitive damages as well as compensatory damages. Punitive damages "are never awarded as of right, no matter how egregious the defendant's conduct." *Smith v. Wade,* 461 U.S. 30, 52, 103 S.Ct. 1625, 1638, 75 L.Ed.2d 632 (1983). On the other hand, once liability is found, a compensatory damage award is required to compensate the plaintiff for her loss. *Id.* Punitive damages are awarded to punish the defendant for his outrageous conduct, and to deter him and others like him from similar future conduct. *Id.* at 54, 103 S.Ct. at 1639. "The focus is on the character of the tortfeasor's conduct—whether it is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards." *Id.* We do not find that the defendants' conduct here is of such character, and we therefore deny an award of punitive damages.

### ORDER

The court finds in favor of the plaintiff against defendants Richard Boandl and George Jessup in the amount of $67,000.00.

Judgment is entered in favor of the plaintiff against defendants Richard Boandl and George Jessup in the amount of $67,000.00.

The court finds in favor of defendants Larry Rosenblum, Raymond J. Pfeiffer, and James T. Rideoutte against the plaintiff.

Judgment is entered in favor of defendants Larry Rosenblum, Raymond J. Pfeiffer, and James T. Rideoutte against the plaintiff.

IT IS SO ORDERED.