**IN THE COURT OF APPEALS**

7/29/97

**OF THE**

**STATE OF MISSISSIPPI**

**NO. 95-CA-01086 COA**

**PHILLIP STOKES**

**APPELLANT**

**v.**

**STEWART MURPHY, EDWARD HARGETT,**

**TYRUS SHIVERS, AND LYNETTE CRISS**

**APPELLEES**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. SHIRLEY C. BYERS

COURT FROM WHICH APPEALED: CIRCUIT COURT OF SUNFLOWER COUNTY

ATTORNEY FOR APPELLANT:

PRO SE

ATTORNEY FOR APPELLEES:

JAMES M. NORRIS

NATURE OF THE CASE: CIVIL--ACTION BROUGHT BY PRISON INMATE AGAINST PRISON PERSONNEL TO BE REINSTATED TO HIS EMPLOYMENT POSITION AS A CANTEEN OPERATOR

TRIAL COURT DISPOSITION: ACTION DISMISSED BY TRIAL COURT

MOTION FOR REHEARING FILED:8/6/97

CERTIORARI FILED: 10/20/97

MANDATE ISSUED: 2/23/98


BEFORE BRIDGES, C.J., COLEMAN AND PAYNE, JJ.

COLEMAN, J., FOR THE COURT:

Phillip Stokes appeals from an order of the Circuit Court of Sunflower County which dismissed his complaint filed against Edward M. Hargett, then Superintendent of the Mississippi State Penitentiary at Parchman (Parchman), J. Stewart Murphy, then Commissioner of Corrections, Tyrus Shivers, the Penitentiary Unit Administrator, and Lynette Criss, then the Penitentiary Case Manager. Stokes claimed that one or more of these four defendants, as members of the administration at Parchman, had dismissed him from his job as a prison canteen operator in Unit 15-A. Stokes claimed that he had a liberty interest in his employment as a canteen operator in Unit 15-A. Perhaps as an effort to buttress his liberty interest in his work assignment as canteen operator, Stokes claimed that his loss of his assignment as canteen operator adversely affected his opportunity to obtain parole. Pursuant to *Sandin v. Conner*, 115 S. Ct. 2293 (1995) and *Orellana v. Kyle*, 65 F.3rd 29 (5th Cir. 1995), we find that Stokes had no liberty interest in his work classification as a canteen operator. Thus, this Court affirms the circuit court's dismissal of Stokes' complaint.

## I. Facts

On March 22, 1993, the Mississippi Department of Corrections Classification Committee (classification committee), acting through Christopher Epps, the classification director, approved Stokes for the job of Unit 15-A canteen operator. Sometime later, the classification committee reviewed Stokes' work assignment, after which it re-assigned him to unit support. Stokes' re-assignment to unit support terminated his work assignment as canteen operator.

## II. Litigation

Stokes' complaint filed in the case *sub judice* is the second complaint which he filed in the Circuit Court of Sunflower County about the loss of his job assignment as canteen operator. The sparse

record in the case *sub judice* contains an order adopting findings and recommendations of magistrate rendered on July 19, 1994, and entered in Cause No. 93-3952(D)(S) by the circuit judge in which he approved and adopted the findings and recommendations of the magistrate for the Fourth Circuit Court District and ordered that Cause No. 93-3952(D)(S) be dismissed "without prejudice." Stokes then filed the complaint which is the source of this litigation in Cause No. 95-0138 of the Circuit Court of Sunflower County on April 14, 1995. The defendants answered Stokes' complaint and asserted the affirmative defenses that Stokes' complaint failed to state a claim and that the defendants were immune.

On September 18, 1995, the circuit judge conducted a hearing in this case.[1] Several matters became the subjects of this hearing, including Stokes' unsuccessful attempt to appeal *in forma pauperis* to the Mississippi Supreme Court from the July 19, 1994 order of the Sunflower County Circuit Court. The Mississippi Supreme Court denied Stokes' appeal *in forma pauperis*. After the hearing had concluded, the circuit judge entered an order which dismissed Stokes' claim "without prejudice." In this order, the circuit judge found that "[i]nmates have no right to a particular job, and prison officials have discretion in assigning prisoners to their work assignments." Stokes has appealed from this order.

### III. Review and resolution of Stokes' issues

Stokes argues two issues in his appeal. We recite them as he composed them in his brief:

I. The Circuit Court Judge erred in dismissing the plaintiff['s] complaint upon a motion to dismiss incorporated into the answer of the defendants[] and renewed ore tenus at the hearing.


II. Whether the Circuit Court singled Appellant Stokes out of the State Systematic Safeguard of his constitutionally guaranteed rights by dismissing his complaint.


This Court finds that Stokes second issue is a "non-issue." First of all, he cites the First, Seventh, and Fourteenth Amendments, but no cases to explicate their relevance to this issue. Instead, he complains in his argument on this issue about what he perceives to have been preferential treatment of three other inmates at Parchman by the Sunflower County Circuit Court, one of whom, Tolbert, also lost his job classification as a canteen operator in Unit 15-A. In Tolbert's case, the magistrate "recommended" that Tolbert be given a full review by a classification committee, which should consider reassigning Tolbert as a canteen operator in Unit 15 or any other unit should such other position become available. The magistrate did not order that anything be done in Tolbert's case. Even had the magistrate ordered any form of relief for Tolbert, his case would not necessarily determine our resolution of the case *sub judice*. Thus, we decline to consider this issue further.

In his first issue, Stokes argues that the allegations in his complaint stated a claim that was sufficient to survive dismissal. The Appellees counter, *inter alia*, that *Sandin v. Conner*, 515 U.S. 472 (1995), and *Orellana v. Kyle*, 65 F.3rd 29 (5th Cir. 1995), support the circuit court's dismissal of Stokes' complaint. We begin our review of this issue by noting that Sections 47-5-99 through 47-5-104 of the Mississippi Code of 1972 create the classification committees of Mississippi's correctional system

and specify their powers and duties. Section 47-5-103 provides:

The committees shall be responsible for assigning a classification to each offender within forty (40) days after the offender's commitment to the custody of the department. The classification shall determine the offender's work duties, living quarters, educational, vocational or other rehabilitation programs, and privileges to be accorded the offender while in custody of the department. The committees, in assigning classifications, shall consider the offender's age, offense and surrounding circumstances, the complete record of the offender's criminal history including records of law enforcement agencies or of a youth court regarding that offender's juvenile criminal history, family background, education, practical or employment experience, interests and abilities as evidenced by mental and psychological examination and knowledge obtained by the committee in personal interview with the offender. The committees shall use the above criteria to assign each offender a classification which will serve and enhance the best interests and general welfare of the offender. The committees shall provide the State Parole Board with a copy of the classification assigned to each offender in the custody of the department who is eligible for parole.

No classification may be changed by any individual or individuals, and may be altered by the action of a committee and entry of the action on the minutes. The classification board, consisting of the commissioner, or designee, deputy commissioner of institutions and the director of offender services may change an action of the committee if the board makes a determination that the action of the committee was not supported by sufficient factual information. . . . The classification of each offender may be reviewed by a classification committee at least once each year.

The committees shall establish substantive and procedural rules and regulations governing the assignment and alteration of inmate classifications, and shall make such rules and regulations available to any offender upon request.

Miss. Code Ann. § 47-5-103 (Rev. 1993).

Section 47-5-104 then provides: "Duties of the classification committee shall also include the hearing of evidence and the making of decisions in all cases whereby an offender is subject to be demoted or having earned time taken from him." Miss. Code Ann. § 47-5-103 (Rev. 1993). This Court quotes at length from these two sections to demonstrate that the legislature has established neither requirements nor standards in accordance with which the classification committees must classify offenders. Instead, the legislature has vested the classification committees with discretion in their exercise of their duties to classify the offenders' "work duties . . . while in custody of the department."

In *Sandin v. Conner*, 115 S. Ct. 2293 (1995), Demont Conner, a prisoner in the state of Hawaii, brought a civil rights action against prison officials to challenge their imposition of disciplinary segregation for his misconduct. Writing for the majority of the Supreme Court, Chief Justice Rehnquist opined:

The time has come to return to the due process principles we believe were correctly established and

applied in *Wolff* [*v. McDonnell*, 418 U.S. 539] and *Meachum* [*v. Fano*, 427 U.S. 215]. Following *Wolff*, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. See also *Board of Pardons v. Allen*, 482 U.S. 369 . . . (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, e.g., *Vitek*, 445 U.S., at 493, 100 S.Ct., at 1263-1264 (transfer to mental hospital), and Washington, 494 U.S., at 221-222, 110 S.Ct., at 1036-1037 (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* at 2300. While the majority opinion allowed that "prisoners do not shed all constitutional rights at the prison gate," "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* at 2301 (citations omitted). The majority opinion then concluded:

We hold, therefore, that neither the Hawaii prison regulation in question, nor the Due Process Clause itself, afforded Conner a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff*.

*Id.* at 2302.

The United States Court of Appeals for the Fifth Circuit has interpreted *Sandlin* to mean that it is difficult to see "any . . . deprivations in the prison context, *short of those that clearly impinge on the duration of confinement*, [which] will henceforth qualify for constitutional 'liberty' status." *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995) (emphasis added). Indeed, even before *Sandin*, the Fifth Circuit had been much more explicit, holding that under Mississippi law, "the classification of inmates is the responsibility of the [Mississippi] Department of Corrections and an inmate has no right to a particular classification." *Tubwell v. Griffith*, 742 F.2d 250, 253 (5th Cir. 1984).

Stokes seeks to force his work assignment as canteen operator within *Sandin*'s definition of a "legitimate liberty interest" by contending that his continued employment as a canteen operator would have insured that he would have been granted parole sooner.[2] Thus, Stokes attempts to transform the termination of this employment into a deprivation that "clearly impinge[s] on the duration of confinement." *Orellana*, 65 F.3d at 31-32. Such an attempt, however, must fail. First of all, the United States Supreme Court addressed this issue in *Sandin* when the majority opined:

Nor does Conner's situation present a case where the State's action will inevitably affect the duration of his sentence. Nothing in Hawaii's code requires the parole board to deny parole in the face of a misconduct record or to grant parole in its absence . . . even though misconduct is by regulation a relevant consideration. The decision to release a prisoner rests on a myriad of considerations. . . . The chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause. The Court rejected a similar claim in *Meachum*, 427 U.S., at 229, n. 8, 96 S.Ct., at 2540 (declining to afford relief on the basis that petitioner's transfer record might affect his future confinement and possibility of parole).

*Sandin*, 115 S. Ct. at 2302. Both the Mississippi Supreme Court in *Harden v. State*, 547 So. 2d 1150, 1152 (Miss. 1989), and the Fifth Circuit in *Scales v. Mississippi State Parole Board*, 831 F.2d 565, 566 (5th Cir. 1987), have concluded that Section 47-3-3 of the Mississippi Code of 1972,[3] the section of the code which delineates the authority and procedures of the parole board, vests *absolute discretion* in the parole board to determine when and if a prisoner eligible for parole will be so released and that this absolute discretion means that a prisoner is afforded no constitutionally protected liberty interest in a parole determination. In the face of such precedent, Stokes' contention that his continued employment as a canteen operator would have resulted in his early release on parole and that the loss of this employment resulted in the prevention of his early release clearly fails to provide a valid ground upon which to premise a claim for deprivation of due process.

This Court concludes from its review of the foregoing authorities that Stokes' job as a canteen operator did not qualify as a legitimate liberty interest which entitled him to any sort of procedural due process. This Court interprets the circuit court's finding in its order of dismissal that "[i]nmates have no right to a particular job, and prison officials have discretion in assigning prisoners to their work assignments" as tantamount to its declaration that Stokes had no liberty interest in his work assignment as canteen operator at Unit 15-A. Thus, we conclude that the circuit court did not err when it dismissed without prejudice Stokes' complaint, and we affirm its order of dismissal.

**THE ORDER OF DISMISSAL OF THE SUNFLOWER COUNTY CIRCUIT COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO SUNFLOWER COUNTY.**

**BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., DIAZ, HERRING, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR. HINKEBEIN, J., NOT PARTICIPATING.**

1. The office of the magistrate for the Fourth Circuit Court District to which the circuit judge referred in the order which he rendered on July 19, 1994, was created by Section 9-7-18 of the Mississippi Code of 1972, which became effective from and after July 1, 1989. Section 9-7-18 was repealed from and after January 1, 1995; but Section 9-7-17 of the Mississippi Code of 1972 was simultaneously amended from and after September 6, 1994, the date the United States Attorney General interposed no objection to its amendment, to provide that four circuit judges should be elected for the Fourth Circuit Court District. Thus, a fourth circuit judge replaced the magistrate for the Fourth Circuit Court District.

2. The record indicates that Stokes became eligible for consideration for parole on May 11, 1996.

3. Section 47-3-3 of the Mississippi Code states in pertinent part:

(1) Every prisoner who has been or may hereafter be convicted of any offense against the State of Mississippi, and is confined in the execution of judgment of such conviction in the Mississippi State Penitentiary . . . *may* be released on parole as hereinafter provided . . . .

Miss. Code Ann. § 47-7-3 (Rev. 1993) (emphasis added).