**Paul KNOX, Plaintiff,**

v.

**Kenneth L. McGINNIS, et al., Defendants.**

**No. 90 C 2720.**

United States District Court, N.D. Illinois, E.D.

Sept. 30, 1991.

**350**

Todd A. Smith, Corboy & Demetrio, Chicago, Ill., for plaintiff.

Wallace C. Solberg, Asst. Atty. Gen., State of Ill., Chicago, Ill., for defendants.

### MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Paul Knox ("Knox") initially tendered a self-prepared 42 U.S.C. § 1983 ("Section 1983") Complaint against former Illinois Department of Corrections Director Kenneth McGinnis ("McGinnis") and Stateville Correctional Center ("Stateville") Warden Thomas Roth ("Roth"). Knox charged that it is unconstitutional, in the course of transporting inmates who are confined to segregation, to use a restraint that comprises a waist chain, handcuffs and a black box covering the chain between the handcuffs. Because this Court's threshold review of the Complaint suggested that it had surmounted the low threshold of legal non-"frivolousness" (as that standard has been defined in *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)), it followed its customary practice in such cases of (1) granting leave to Knox to proceed in forma pauperis and (2) appointing counsel from this Court's trial bar to represent Knox pro bono publico.

Now defendants have moved for summary judgment under Fed.R.Civ.P. ("Rule") 56. For the reasons stated in this memorandum opinion and order, their motion is granted and this action is dismissed.

### Facts

This District Court has promulgated its General Rule ("GR") 12(m) and 12(n) to implement the procedure called for by Rule 56. Defendants have not only complied with the timetable that this Court had set for their opening submission[1] but have also submitted the required GR 12(m) statement.

Knox' response is nearly a month overdue, which (1) under GR 12(n) causes the material facts that were set forth in defendants' GR 12(m) statement to be deemed admitted and (2) under GR 12(p) permits this Court to proceed on the basis of the single submission. Ordinarily this Court would, instead of invoking GR 12(n) and 12(p), have its staff pursue the delinquent lawyer by one or more telephone calls asking that he or she tender the necessary filing in opposition—especially where the delinquent lawyer is an appointed rather

---

**1.** This Court always sets the schedules for contested motions after it has conferred with counsel to make sure they are realistic—indeed, this Court regularly encourages the lawyers to set the briefing schedules by mutual agreement, and this Court uniformly approves such agreed-upon schedules unless they are extraordinarily protracted.

than retained counsel, so that it would be unfair to visit any sins of the lawyer on the client (contrast *Link v. Wabash R.R.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390–91, 8 L.Ed.2d 734 (1962)[2]).

■ In this instance, however, the legal situation is so plain that the case can fairly be dealt with in its present posture. As for the underlying facts, defendants rely entirely on Knox's own sworn deposition testimony (D.Ex. 3) and on his disciplinary record that led to the use of the challenged device when he left the segregation unit to meet with visitors and for trips to the hospital or law library (D.Exs. 1, 2 and 4). Defendants' GR 12(m) statement is sufficiently brief and straightforward that it is attached to this opinion—and it constitutes the factual backdrop for discussion of the legal questions.[3]

### Qualified Immunity

■ In an effort to extricate themselves entirely from this type of litigation, defendants invoke the seminal teaching of *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citations and footnotes omitted):

We therefore hold that government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment. On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful.

But defendants' effort to obtain total dismissal on that ground is an oversimplification, because qualified immunity would not insulate them from the *injunctive* relief that Knox seeks to obtain against any future use of the restraints (such a prayer for relief states an official-capacity rather than an individual-capacity claim, so that qualified immunity does not apply). This opinion will therefore have to deal with that issue a bit later.

■ As for Knox's damages claim, however, defendants are right. *Anderson v. Creighton*, 483 U.S. 635, 638–40, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987) has explicated the concept of "clearly established" rights for purposes of applying the *Harlow* principle. There is no way in which the prior use of the restraint that Knox challenges in this case could be said to have been violative of a prisoner's "clearly established" Eighth Amendment right to be protected from "cruel and un-

**2.** *Link* said there:

There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."

**3.** This Court has also read Knox' deposition in its entirety, because Rule 56 principles impose on the movant the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)) and for that purpose this Court is "not required to draw every conceivable inference from the record—only those inferences that are reasonable"—in the light most favorable to the nonmovant (*Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991) and cases cited there). Although defendants' GR 12(m) statement does not of course cite to all aspects of Knox' deposition, no inferences that might reasonably be drawn from uncited parts of the deposition would generate any issue of material (that is, outcome-determinative) fact either.

usual punishment." [4] Not only has the prior case law looked in the other direction, with the one Court of Appeals that had considered the issue having found the practice of using the "black box" to be constitutional (*Fulford v. King,* 692 F.2d 11, 13, 14–15 (5th Cir.1982) [5]), but the most recent decision by our Court of Appeals has foreclosed any arguable notion that the Eighth Amendment would be read so expansively in the prison context as to subject defendants to this lawsuit (*McGill v. Duckworth,* 944 F.2d 344 (7th Cir.1991)).

■ Even were qualified immunity not available to insulate defendants from any liability for damages, Knox would fail in this action because nothing at all ties either McGinnis or Roth personally to the assertedly wrongful conduct. Knox Dep. 42–43 reflects that he never communicated with either defendant on the subject—instead he named each as a defendant in this action solely on the basis that "he should know" about the procedure and practice. That of course does not do the job, because Section 1983 liability must be predicated on *personal* involvement—but this opinion has nonetheless dealt with the broader exculpation that is provided by qualified immunity principles, so that Knox will understand that he would be no better served by any later attempt to sue specific correctional officers on the same ground.

Accordingly defendants are entitled to a judgment as a matter of law dismissing Knox' damages claim against them. It remains only to turn briefly to the question of injunctive relief—Knox's official-capacity claim—in light of *McGill.*

### Eighth Amendment Liability

When defendants submitted their summary judgment motion and supporting materials six weeks ago, they devoted the major part of their memorandum of law (Mem. 4–7) to the proposition briefly stated in the caption of that section:

The Use of Restraints on a Segregation Inmate Being Transported Outside of the Cell Does Not Violate the Eighth Amendment

For that purpose they pointed to the particularized holding of the Court of Appeals for the Fifth Circuit in *Fulford,* to the related though not at all identical holding of our Court of Appeals in *Wells v. Franzen,* 777 F.2d 1258, 1264 (7th Cir.1985) and to the other decisions referred to in n. 5 of this opinion.

■ What defendants inexplicably did not address—though they certainly should have—was the question of Knox' standing to raise the injunctive issue at all. Knox has been out of segregation for exactly a year as of the date of this opinion (he was released back to a general population cell at Stateville on October 1, 1990, Knox Dep. 17). Before he became involved in the February 1990 disciplinary proceeding that led to that period of confinement, he had been in segregation only *once*—back in 1986 (*id.* 10–11).

That situation bears a substantial resemblance to *City of Los Angeles v. Lyons,* 461 U.S. 95, 101–10, 103 S.Ct. 1660, 1664–69, 75 L.Ed.2d 675 (1983), which stated the operative standard in these terms (*id.* at 101–02, 103 S.Ct. at 1664–65 (citations omitted)):

It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Art. III of the Constitution by alleging an actual case or controversy. Plaintiffs must demonstrate a "personal stake in the outcome" in order to "assure that concrete adverseness which sharpens the presentation of issues" necessary for the proper

---

4. As always, this opinion adheres to the conventional and convenient (though technically imprecise) practice of referring to the Eighth Amendment's underlying Bill of Rights provision (which of course imposes limitations only on the federal government) rather than to the Fourteenth Amendment (which applies to state actors and has been construed to embody such Bill of Rights guaranties).

5. Also cf. *Tubwell v. Griffith,* 742 F.2d 250, 252–53 (5th Cir.1984) and the opinion of this Court's colleague Honorable Marvin Aspen in *Hanna v. Lane,* 610 F.Supp. 32, 35–36 (N.D.Ill.1985), each of which cases rejected a constitutional challenge to the use of a similar (though perhaps not identical) device.

resolution of constitutional questions. Abstract injury is not enough. The plaintiff must show that he "has sustained or is immediately in danger of sustaining some direct injury" as the result of the challenged official conduct and the injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical."

In *Lyons* (the so-called "choke hold" case) the Court held that there was no jurisdiction to entertain a claim for injunctive relief because the "case or controversy" requirement of Article III had not been satisfied where plaintiff could not (*id.* at 105, 103 S.Ct. at 1667) "establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part." Here Knox has no problem with *part* of the showing (that Stateville personnel always use the challenged restraint in transporting inmates who have been transferred to the segregation unit), but the most that he can establish on the other part of the "case or controversy" showing is that he *might* again find himself in segregation at some future date. Because there are plenty of inmates who are actually in segregated status at any given time, this is not a situation in which the need for an actual existing controversy may be excused because the issue is "capable of repetition yet evading review" (see *United States Parole Commission v. Geraghty*, 445 U.S. 388, 398, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980)).

█ It is at least questionable, then, whether subject matter jurisdiction even exists to adjudicate the potential for injunctive relief against the use of the challenged restraint. But if Knox *could* somehow overcome that threshold bar to his Eighth Amendment claim to an injunctive remedy, the final nail has been driven into the coffin in which any such claim must be buried. Even if Knox' claim could have survived under the earlier case law (and it would be euphemistic to describe that prospect as remote), *McGill* surely closes the door entirely. No purpose would be served by selective quotation from that opinion—its entire treatment of the Eighth Amendment subject is relevant and conclusive here.

### Conclusion

There is no genuine issue of material fact, and defendants are entitled to a judgment as a matter of law on more than one ground. This action is dismissed in its entirety.

## STATEMENT OF UNCONTESTED FACTS

### Attachment

1. At the time of the conduct complained of, the plaintiff was incarcerated at the Stateville Correctional Center. (Plaintiff's Complaint at 2).

2. On February 21, 1990, dangerous contraband, specifically: four homemade knives, two of them in excess of twenty inches in length; two metal bar pieces; one metal file eight inches long; and several pieces of sandpaper were found in plaintiff's cell. (See Disciplinary Report, attached as Defendants' Exhibit 1; the Adjustment Committee Summary, attached as Defendants' Exhibit 2; and the Affidavit of Gary Wintersteen, attached as Defendants' Exhibit 4)

3. On March 1, 1990, a Stateville Adjustment Committee found plaintiff guilty of violating Department of Corrections Rule 104: "Dangerous Contraband". Plaintiff was disciplined as follows: one year of statutory good time revoked; demotion to Grade C; and one year segregation. (Defendants' Exhibit 2.)

4. Plaintiff was required to wear handcuffs, a waist chain and a "black box" upon leaving Segregation for visits, for trips to the hospital, or for trips to the law library. (Plaintiff's Deposition at 16, Plaintiff's Deposition, attached as Defendants' Exhibit 3).

5. Without a black box over the chain connecting the two handcuffs, an inmate could pick at the keyhole on the handcuffs; with a black box an inmate is unable to pick at the keyhole on the handcuffs.

(Plaintiff's Deposition at 16, Defendants' Exhibit 3).