John FULFORD and John Richard Merit, Petitioners-Appellants,

v.

John T. KING, Secretary, Louisiana Department of Corrections, and Ross Maggio, Jr., Warden, Louisiana State Penitentiary, Respondents-Appellees.

No. 82–3050
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 22, 1982.

Rehearing Denied Dec. 20, 1982.

---

John Fulford, pro se.

John Richard Merit, pro se.

J. Marvin Montgomery, La. Dept. of Justice, Baton Rouge, La., for respondents-appellees.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

John Fulford and John Merit appeal from a magistrate's dismissal of their *pro se* § 1983 suit challenging the conditions of their confinement at Angola State Prison.[1] Finding that the conditions they complain of violate neither the eighth nor the fourteenth amendment, we affirm.

## I.

Fulford and Merit are confined in the "extended lockdown" close cell restricted (CCR) unit at Angola. Usually, prisoners are confined in CCR because they present a security risk, pose a physical danger to other prisoners, or might themselves be in

---

1. It is now well settled that § 1983 actions are appropriate for prisoner challenges to conditions of confinement. *See Rhodes v. Chapman,* 452 U.S. 337, 339, 101 S.Ct. 2392, 2395, 69 L.Ed.2d 59, 64 (1981).

physical peril from other prisoners.[2] CCR inmates are confined in single cells for twenty-three hours each day. During the other hour, they shower and exercise.

The prisoners' challenge focuses on two prison policies. They contend that they are denied equal protection by the directive that they be "fully restrained"[3] whenever they leave their housing tier for trips to other parts of the prison because other prisoners in extended lockdown in different parts of the prison are not so restrained.[4] They also challenge, as cruel and unusual punishment, the prison policy requiring them to wear a "black box" over their handcuffs on trips outside the prison. The box is a metal or plastic device fitting over the handcuffs to prevent them from being picked. The box, according to the inmates who testified, holds the wrists and arms in a rigid, unnatural position. It causes the prisoners' arms to become numb and leaves a temporary, albeit noticeable, mark when removed.

We consider these arguments in turn.

## II.

■ The prisoners neither claim to be, nor are, members of a suspect class. Therefore, the state need only demonstrate that its decision to require full restraints on CCR prisoners and not on other prisoners is rationally related to a legitimate interest in order to prevail. *See, e.g., Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501 (1970).

■ The Lieutenant Colonel of the Penitentiary testified that the shackles and chains are used on all CCR prisoners because they "are living in that maximum security facility. And [they] ha[ve] to be treated identical to those people in that same area." The prisoners in extended lockdown are "classified as either security risks or people [who] are physically dangerous to themselves or to others." Finally, the official testified that all persons confined in CCR are treated identically to those in the "Hawk" unit of Camp D and the "Garr" unit at Camp J, both of which are classified as extended lockdown units. He expressly contradicted the prisoners' contention that other cell blocks are extended lockdown units, stating that "you have the working cell blocks mixed. The cell blocks here at the main prison are working cell blocks."[5]

Therefore, it appears from the record that prisoners in extended lockdown facilities are treated equally. Even if, however, it were true that some extended lockdown prisoners are restrained and others are not, we cannot say that this condition would violate the equal protection clause. Whatever may be the reason provoking special security arrangements for prisoners on extended lockdown in other units, all of the prisoners in CCR are classified as extreme risks and maximum security prisoners. It is not irrational for the state to require that they be fully restrained when traveling about the prison accompanied by unarmed guards and exposed to other inmates even

2. Other prisoners, like Fulford, were assigned to CCR some time ago and have refused opportunities to return to the general prison population.

3. Prisoners under full restraint must wear handcuffs, a waist belt to which the handcuffs are attached, and leg shackles.

4. There was also testimony that CCR prisoners fear for their safety because, on trips within the prison, they must pass by many unrestrained inmates, including inmates allegedly confined in other extended lockdown units. For example, one witness was in CCR for protective reasons; his co-defendant had threatened his life. He testified that he felt vulnerable to

attack when passing by inmates who were unrestrained and when sitting, fully restrained, in a dentist's chair.

CCR prisoners are escorted by a guard at all times when outside their housing tier. The guards are unarmed; no guard regularly exposed to prisoners at Angola carries a weapon. This presumably prevents inmates bent on escape from acquiring a weapon.

5. "Working" cell blocks are presumably those areas in which a prisoner spends most of the day on a work detail. CCR prisoners do not work; indeed, there was testimony that some prisoners are placed in CCR for refusing to work.

if it does not exact the same restraint when other prisoners are being moved.[6]

## III.

█ The eighth amendment applies to the states through the fourteenth amendment. *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). Only last term, the Supreme Court addressed the eighth amendment's limitations on the conditions in which the State may confine those convicted of crimes. *Rhodes v. Chapman,* 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). The Court held that the eighth amendment prohibits punishments that, while not barbarous, "involve the unnecessary and wanton infliction of pain." *Id.* at 345, 101 S.Ct. at 2398, 69 L.Ed.2d at 67 (quoting *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859, 874 (1976) (opinion of Stewart, Powell, and Stevens, JJ.)). Thus, the eighth amendment prohibits inflictions of pain "totally without penological justification." *Rhodes,* 452 U.S. at 345, 101 S.Ct. at 2398, 69 L.Ed.2d at 67 (quoting *Gregg,* 428 U.S. at 183, 96 S.Ct. at 2929, 49 L.Ed.2d at 880).

█ In this case there was testimony that the black box is used as an additional security measure when prisoners are transported outside the prison. This is justified by the greater risk of escape when prisoners are outside the institution and the reduced number of guards available to oversee the prisoners during those journeys. We cannot say that the use of the black box under such circumstances is without penological justification.[7]

The plaintiffs' reliance on *Spain v. Procunier,* 600 F.2d 189 (9th Cir. 1979), is misplaced. *Spain* involved the use of a neck chain which could be pulled from the back to restrain a prisoner. Prisoners were thus restrained during all trips inside and out of the prison. The district court had granted a sweeping injunction permitting mechanical restraints only when the inmate's actions threatened bodily harm or escape. The court of appeals affirmed only that portion of the injunction prohibiting the use of neck chains inside the prison, noting: "[T]he state did not show that neck chains were necessary for every plaintiff throughout the long period [four and one-half years] covered by this case." *Id.* at 197. The court added, however, that it "would be reluctant to say that, given the violent history of these prisoners and the severity of the sentences they face, use of neck chains for the purpose of preventing escape when the prisoners are being transported outside the prison confines is to be prohibited regardless of the disposition or behavior of the prisoner." *Id.* It, therefore, concluded that use of a neck chain was not always cruel and unusual punishment.

█ We reach a similar conclusion regarding the black boxes. Requiring all CCR prisoners to wear a black box when outside the prison does not violate the eighth amendment.[8] Its use may inflict some discomfort, such as numbness of the arms and temporary marks, but the record does not show that prisoners are exposed to great pain or that any of their discomfort is

---

6. There is no testimony in the record concerning the classifications of prisoners in the other cell blocks. Therefore, we cannot speculate whether prisoners in the units described by the Lieutenant Colonel as "working cell blocks" are maximum security prisoners or are considered to pose a danger to themselves and others.

7. Indeed, one of Fulford's disciplinary offenses was possession of a handcuff key.
An Assistant U.S. Marshal testified that the Marshal's service used "pickproof" handcuffs when transporting prisoners. He testified that, although those particular handcuffs were available only to the Marshals, a similar series was probably available to the state. This evidence

presumably demonstrates that "less restrictive alternatives" of insuring security during trips outside the prison are available to the state. The eighth amendment does not require, however, that the state use the best means available for confining its prisoners. It only requires that the punishment not be "cruel and unusual." That requirement is satisfied in this case.

8. One inmate who wore a black box to a trial testified that he could not recall whether it was removed while he was testifying. None of the prisoners involved in this case were apparently required to wear a black box during this trial.

occasioned either deliberately, as punishment, or mindlessly, with indifference to the prisoners' humanity. The box's use outside of the prison is for a rational reason, security, and is directed by a standard prison policy, not left to unfettered discretion of guards. Under these circumstances, it is not within our power to substitute our judgment for that of the prison officials.

While there was testimony that the black box may be used inside the prison "at the discretion [of the supervisor]," there is no evidence that it was frequently so used or that its use was arbitrary or punitive. The supervisor gave as examples "an escape artist or if we think for *some other reasons* we need to put a black box on him to keep him from picking the locks or *what have you, we just might decide* to put the black box on him." (emphasis added). Three of the witnesses testified that the black box was used on them on a single occasion while they were testifying at a state court hearing inside the prison. They alleged that the boxes were used as retaliation for the plaintiffs' filing suit against prison officials. The magistrate was not persuaded that this use was either as punishment or at a guard's caprice, and that conclusion is not clearly erroneous. Of course, the use of the black box as a retaliatory or punitive measure would be an element in deciding whether black boxes are impressed on inmates within the prison as punishment and, as such, whether this use violates the eighth amendment. However, the present case does not require us to consider these contingencies.

For these reasons, the judgment dismissing the complaint is AFFIRMED.