**Robert E. TUBWELL,**
**Plaintiff-Appellant,**

v.

**Frances T. GRIFFITH, etc., et al.,**
**Defendants-Appellees.**

No. 83–4659
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 24, 1984.

Robert E. Tubwell, pro se.

Edwin L. Pittman, Atty. Gen., Robert L. Gibbs, Sp. Asst. Atty. Gen., Jackson, Miss., for defendants-appellees.

Before GEE, JOHNSON and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

This is a prisoner's pro se appeal of the district court's denial of his motion for a preliminary injunction. We affirm.

Robert E. Tubwell is a prisoner at Parchman, the Mississippi State Penitentiary. On June 16, 1983, Tubwell, without authorization, crossed a certain boundary, termed a "gun line" because prisoners who cross the line without permission may be shot. As a result of this infraction, a status classification hearing was held and Tubwell's custody status was reduced from grade B to C. A custody status of C refers to "close custody" inmates, that is, those inmates considered to present increased security risks because they are dangerous to themselves and to others.

Because Parchman's main library is less secure than other areas of the penitentiary, C custody status inmates are required to wear leg shackles and waist chains at the main library. The leg shackles permit the inmate to walk with a shortened stride, while the waist chains hold one of the inmate's hands at his side, allowing only a limited extension of the hand. An inmate who is right-handed instead of left-handed has no restraint on that hand and vice-versa. Both hands are freed when necessary for an inmate to use a typewriter.

Tubwell filed suit when pursuant to his change in security classification, he was placed in physical restraints when attending the main penitentiary law library. These restraints, he argues, obstruct his access to the library, hinder his ability to pursue litigation, and thereby deny him access to the courts. After Tubwell moved for a preliminary injunction, the magistrate, pursuant to 28 U.S.C. § 636(b)(1)(B), held a hearing and entered oral findings and conclusions which recommended denial of relief on the grounds that (1) Tubwell failed to show a substantial likelihood of prevailing on the merits; (2) that a threat of irreparable harm to the defendants existed; and (3) injunctive relief could disserve the public interest in adequate security at Parchman's library. The district court adopted the magistrate's recommendation and denied the motion for preliminary injunction.

To obtain a preliminary injunction, the movant has the burden of establishing four factors: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant outweighs the threatened harm the injunction might cause the opposing party; and (4) that the grant of the injunction will not disserve the public interest. *Roberts v. Austin*, 632 F.2d 1202, 1207 (5th Cir.1980), *Canal Authority of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974).

The district court's denial of an application for preliminary injunction will be upheld unless an abuse of discretion is shown. *Interox v. PPG Industries, Inc.*, 736 F.2d 194, 198 (5th Cir.1984), *Foley v. Alabama State Bar*, 648 F.2d 355, 358 (5th Cir.1981), *Apple Barrel Productions, Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir.1984), *Foley*, 648 F.2d at 358.

Our review of the record convinces us that the district court acted well within its discretion by denying Tubwell's application for preliminary injunction.

█ It is well-established that access to the courts is a fundamental constitutional right. *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72, 78 (1977), *Ryland v. Shapiro*, 708 F.2d 967, 971 (5th Cir.1983). Prison officials must ensure that prisoner access to the courts is "adequate, effective and meaningful." *Bounds*, 430 U.S. at 822, 97 S.Ct. at 1495, 52 L.Ed.2d at 79.

█ Thus, if Tubwell could show that the use of the leg and waist restraints effectively blocked meaningful access to the courts, a problem of constitutional dimension would be presented. The record, however, establishes that this is not the case. Tubwell has been able to go to the library and to make use of its books and other resources. Although the testimony was conflicting on Tubwell's ability to retrieve books, it is uncontroverted that assistance was available to him; in fact, Tubwell admits that on each visit to the library, he was accompanied by a "clerk" who would obtain books for him and perform other requests. In addition, Tubwell was permitted the use of both hands when he desired to type. There is no evidence that his efforts in preparation for his present lawsuit were effectively impeded. Under these circumstances, we cannot find that Tubwell was denied meaningful access to the courts.

█ Tubwell also argues that the physical restraints chosen by Parchman officials were not the least restrictive means available and therefore the chosen method constitutes an interference with his right of access.

Security is a central concern of prison officials. *Bell v. Wolfish*, 441 U.S. 520, 546–47, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447, 473 (1979). Because prison administrators are best suited to determine the practices and procedures necessary to maintain security, their decisions will be upheld unless they have exaggerated their response to security and discipline considerations so that their actions are unreasonable and arbitrary. *Bell v. Wolfish*, 441 U.S. at 548, 99 S.Ct. at 1878–79, 60 L.Ed.2d at 474, *Sullivan v. Ford*, 609 F.2d 197, 198 (5th Cir.), cert. denied, 446 U.S. 969, 100 S.Ct. 2950, 64 L.Ed.2d 829 (1980).

█ Parchman's law library is less secure than other parts of the prison. The library's correctional personnel are unarmed and carry only mace; there are no nearby guard towers. The library is surrounded only by a razor wire fence and the front gate leading to the library is usually unlocked. The library therefore presents increased opportunities for escape; in addition, its personnel and visitors are more vulnerable to violence. Under these circumstances, the use of physical restraints to prevent violence or escapes is not arbitrary or unreasonable. Nevertheless, Tubwell asserts that assigning a guard to him or allowing him to use the library after hours would be less restrictive means of maintaining security. Prison resources are limited, and we will not require prison officials to adopt a particular practice where other acceptable means are available. *Stevenson v. Reed*, 391 F.Supp. 1375 at 1383 (Miss.1975). This reasoning has particular force here where the use of the physical restraints entails, at most, a de minimus interference with the right of access to the courts.

The record does not establish that the restraints include infliction of pain "totally without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 345, 101 S.Ct. 2392, 2398, 69 L.Ed.2d 59, 67 (1981), *Fulford v. King*, 692 F.2d 11, 13 (5th Cir.1982). In fact, the record shows that although the restraints made performance of tasks more difficult than their performance without the restraints, they caused little or no pain. No evidence was presented that the restraints were used as retaliatory or punitive measures. See *Fulford v. King*, 692 F.2d at 15. Since the use of the restraints in the library is justified by the increased security risks of C custody inmates, we

discern no eighth amendment violation. See *Fulford v. King*, 692 F.2d 13–14.

Tubwell also contends that since no evidence was presented that he had attempted to escape or assault anyone while incarcerated at Parchman, the defendants abused their authority by classifying him as a C custody inmate. Under Mississippi state law, the classification of inmates is the responsibility of the Department of Corrections, and an inmate has no right to a particular classification. Miss. Code Ann. §§ 47–5–99 through 47–5–103. Thus, Tubwell has no liberty interest in his custody classification under the Due Process Clause. *Meachum v. Fano*, 427 U.S. 215, 226–28, 96 S.Ct. 2532, 2539–40, 49 L.Ed.2d 451, 460–61 (1976), *Montayne v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466, 471 (1976). We have often noted that prison officials have a broad discretion in classifying prisoners in terms of their custodial status. *Wilkerson v. Maggio*, 703 F.2d 909 at 911 (5th Cir. 1983), *McGruder v. Phelps*, 608 F.2d 1023 at 1026 (5th Cir.1979), *Cruz v. Beto*, 603 F.2d 1178, 1185 (5th Cir.1979). Since Tubwell crossed the gun line without permission, we cannot conclude that Parchman officials abused their discretion when, after a hearing, they changed his custody status.

Since Tubwell has failed to establish any of the elements necessary to obtain a preliminary injunction, the judgment of the district court is AFFIRMED. Appellant's motion to require the United States District Court Clerk to mail and submit the exhibits D5 and D6 to this court for review is DENIED.

AFFIRMED.