**Dean BENTER, Plaintiff,**

v.

**Dr. Glenn PECK, Ronald Welder, and Karl Kemp, Defendants.**

Civ. No. 4–92–CV–20085.

United States District Court, S.D. Iowa, C.D.

June 25, 1993.

Jeffrey M. Lipman of Lipman Law Firm, Des Moines, IA, for plaintiff.

Bruce C. McDonald of Dickey, Smith, Kultala and McDonald Firm, Keokuk, IA, for Glenn Peck and Karl Kemp.

Asst. Atty. Gen., R. Andrew Humphrey, Des Moines, IA, for Ronald Welder.

## OPINION AND JUDGMENT

BREMER, United States Magistrate Judge.

Plaintiff Dean Benter, an inmate at the Iowa State Penitentiary (ISP), brings this action under 42 U.S.C. § 1983, claiming he was subjected to cruel and unusual punishment in violation of the Eighth Amendment. Benter claims that Defendants were deliberately indifferent to a serious medical need when they withheld his prescription eyeglasses to compel him to pay for the glasses. Benter seeks damages and injunctive relief. Defendants deny that Plaintiff has been deprived of any of his constitutional rights, and they assert the affirmative defense of qualified immunity.

A trial was held April 6, 1993, upon the consent of the parties pursuant to 28 U.S.C. § 636(c) in Fort Madison, Iowa. Plaintiff was represented by Jeffrey M. Lipman; Defendants Dr. Glenn Peck and Karl Kemp were represented by Bruce C. McDonald; and Defendant Ronald Welder was represented by Assistant Attorney General R. Andrew Humphrey. Post-trial briefs were filed by April 19, 1993. The matter is fully submitted.

### FINDINGS OF FACT

Benter's prescription glasses were broken during an altercation with a correctional officer at the Iowa Medical and Classification Center, Oakdale, Iowa, on December 2, 1991. Benter received a disciplinary report for the incident, and a disciplinary committee found him guilty of rule violations as a result.[1] Benter alleges that correctional officers broke his glasses when they wrestled him to the ground and handcuffed him using excessive force.[2]

---

1. Benter's disciplinary report was upheld on appeal. Benter filed a postconviction relief action in state court. The state dismissed the disciplinary report and expunged it from his record, in return for Benter's dismissal of his postconviction relief action.

2. Benter has not made his claim of excessive force a ground for this or any other § 1983 action, nor has he filed a state tort claim for replacement of the glasses.

Benter was transferred from Oakdale to ISP on December 2, 1991. Defendant Dr. Peck, a licensed optometrist who contracts with Correctional Medical Services (CMS) to provide medical services at ISP, examined Benter's eyes on December 5, and ordered replacement glasses for Benter at a cost of approximately $12.40.

Dr. Peck graduated from Northern Illinois College of Optometry, Chicago, Illinois, in 1936. He has provided optometric services at ISP for 25 years in addition to working in private practice. Defendant Karl Kemp, director of CMS, formulates and implements policies followed by CMS staff. ISP policy provided that, "A licensed optometrist is responsible to provide vision screening and ophthalmology/optometry care for inmates at the Iowa State Penitentiary." ISP policy # 86–9–4–742 A (June 1990).

Benter is nearsighted. Without glasses, his vision is approximately 20/400. Benter can read without glasses if the print is eight to 12 inches away from his eyes. Dr. Peck provided conflicting testimony as to whether prescription glasses are medically necessary for Benter. First, Dr. Peck testified that it would be a medical necessity for a person with Benter's deficient eyesight to wear glasses in the general prison population. He then testified that Benter would not need glasses as a medical necessity in the general population; if he "kept his nose clean, he shouldn't have to worry about seeing far." Dr. Peck testified that Benter cannot see well at a distance; Benter cannot drive and "cannot recognize his own mother across the street without glasses."

Dr. Peck did not give Benter the glasses when they arrived in late December 1991 because ISP's security department informed him that Benter was responsible for the damage to his glasses, and that Benter's account did not have enough money to pay for the glasses. Dr. Peck testified he has no discretion, even in a case of medical necessity, to directly provide replacement glasses for an inmate, when providing these glasses violates prison policy. He said he was required to abide by prison authorities' decisions not to provide Benter the glasses, or he would have been fired. Dr. Peck believes that he does not have a duty to advise prison officials, or even Kemp, director of CMS, when he determines that glasses are a medical necessity for an inmate; he assumes CMS and prison authorities will check with him or review the inmate's chart before they decide to withhold glasses.

ISP policy requires inmates to wear state-issued glasses; if the glasses are lost or destroyed, they are to be replaced at the inmate's expense. ISP Policy # 86–9–4–742 A at 2. "The inmate is financially responsible for damage except where the damage occurs during an inmate's constructive participation in institution programs (i.e. work assignment)." *Id.*

Defendant Ronald Welder, ISP's correctional services manager and grievance officer, testified there are common-sense exceptions to this general policy; the exact wording of the policy is not always followed. For instance, if an ISP staff member breaks an inmate's glasses, the issue of whether ISP is responsible for replacing the glasses depends on the circumstances. Welder decided that Benter did not qualify for an exception entitling him to glasses paid for by ISP, and that therefore Benter had to pay for the new glasses. Welder testified the factors he considered included the grievance, the disciplinary report, and the outcome of the inmate's appeal of his report.

One factor Welder did not consider in reaching his decision was Benter's serious medical need for glasses. Welder testified that Benter did not inform him he had a serious medical need for the glasses, although Benter informed Welder in his grievance appeal of his inability to read the eye chart in the infirmary. Welder did not investigate or ask Dr. Peck whether Benter had any serious medical need. To this date, Benter still does not have glasses.

If an inmate cannot afford replacement glasses, he must wait to receive the glasses until he has enough money in his account to pay for them, or he must make other arrangements to pay. Welder testified that when inmates have insufficient funds in their accounts to pay for replacement glasses or certain other items, they may obtain the

deputy warden's permission to debit their inmate accounts and go into debt to pay for the items. Welder did not seek the deputy warden's permission on Benter's behalf to exceed the amount in Benter's account to pay for the glasses, nor did he suggest that Benter seek this permission. Benter never asked for deficit spending from his account; he has always demanded that the state pay the full cost of the glasses.

Benter testified he was not told how much the state charged for replacement glasses; he said he presumed the glasses would cost approximately $160, the last estimate he had for glasses when he was out of custody. Dr. Peck testified that he always tells inmates the approximate cost of new glasses and that he believes he told Benter that his store order for payment should be made for about $13.00. Dr. Peck's chart notes for December 27, 1991, indicate Dr. Peck told Benter that when he had enough money in his account, Dr. Peck would give him the glasses "if they are still here." The court finds that in December 1991 Benter was aware of the modest cost of the state-issued glasses. The glasses are still at CMS in the infirmary; by virtue of this lawsuit, if not otherwise, Dr. Peck and Kemp know that they were never delivered.

When Benter transferred from Oakdale to ISP, he had $44.36 in his institution account. That amount arrived at ISP on December 6, 1991. Benter had a balance of $51.27 in his account on December 31, 1991, four days after meeting with Dr. Peck. On January 8, 1992, Benter used $15.54 to buy a dictionary. On January 17, 1992, Defendant Kemp explained to Benter in response to an inmate memo that pursuant to prison policy Benter, not the state, must pay for the replacement glasses. Kemp told Benter that as of January 17, he had enough money in his account to pay for the glasses. Expenditures reduced the account to the extent that Benter did not have enough money to pay for the glasses by January 23, 1992. But in September 1992, Benter had $122.15 in his account. Because Benter is currently in administrative segregation, the state deposits $7.70 each month into Benter's account, from which he must purchase personal hygiene supplies and postage at the canteen. Benter also receives money from his family, which is deposited into his account.

Benter has consistently refused to sign a prison store order, which would allow ISP officials to withdraw money from his institution account to pay for the glasses; he maintains that it is the state's responsibility to pay in full for the glasses.

## CONCLUSIONS OF LAW

■ Deliberate indifference to inmates' serious medical needs violates the Eighth Amendment's proscription of cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). In order to prevail on his claim, Benter must establish (1) that he had a serious medical need, and (2) that defendants were deliberately indifferent to his serious medical need. *See Estelle*, 429 U.S. at 104, 97 S.Ct. at 291; *Boswell v. Sherburne County*, 849 F.2d 1117, 1122 (8th Cir.1988), *cert. denied sub nom., Witschen v. Boswell*, 488 U.S. 1010, 109 S.Ct. 796, 102 L.Ed.2d 787 (1989); *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir.1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981).

## I. SERIOUS MEDICAL NEED

■ A serious medical need is defined as "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir.1991).

■ A legal definition of "blind" or "blindness" is "central visual acuity of the number 20/200 or less in the better eye with the use of a correcting lens." 42 U.S.C. § 416(i)(1) (1991); 441 IAC 50.1(249) (1991). In December 1991, Benter's vision without his glasses was 20/400. When Defendants refused to give Benter his replacement glasses until he paid for them, the result was that Benter's eyesight fell within the parameters of a definition of "blindness."

Testimony showed that because of Benter's poor vision without his glasses, he was unable to work at the prison or function in the general prison population. Even a lay-

person would recognize 20/400 vision as a serious medical need.

The court holds Benter's poor vision constituted a serious medical need for prescription glasses.

## II. DELIBERATE INDIFFERENCE

■ To establish deliberate indifference to his serious medical need, Benter must show Defendants each acted with the culpable state of mind necessary for the punishment to be regarded as cruel. *See Wilson v. Seiter*, —— U.S. ——, ——, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991). Not every prisoner claim of inadequate medical treatment constitutes an Eighth Amendment violation.

■ Only a deliberate indifference to a serious medical need that offends evolving standards of decency violates the Eighth Amendment's prohibition of cruel and unusual punishment. *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292. "Deliberate indifference" to a serious medical need is shown when prison officials have, *inter alia*, prevented an inmate from receiving recommended treatment. *Ramos*, 639 F.2d at 575. Courts have consistently held that the knowledge of the need for medical care and the intentional refusal to provide that care are more than negligence and constitute deliberate indifference. *Id.; cf. Robinson v. Moreland*, 655 F.2d 887, 890 (8th Cir.1981).

■ Deliberate indifference is established if necessary medical treatment is delayed for non-medical reasons. *Taylor v. Bowers*, 966 F.2d 417, 423 (8th Cir.) (holding doctor's delay of surgical intervention in order to prompt inmate to confess he swallowed drug-filled balloon violated inmate's right to treatment of serious medical condition), *cert. denied sub nom. Bowers v. Taylor*, —— U.S. ——, 113 S.Ct. 394, 121 L.Ed.2d 302 (1992). Delay in medical treatment of a serious medical need cannot be justified as a means to compel payment. *Fields v. Gander*, 734 F.2d 1313, 1314–15 (8th Cir.1984) (per curiam) (delaying access to dental care

for infected tooth for three weeks to compel payment of earlier dental bill could constitute Eighth Amendment violation); *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3rd Cir.1987) (prison officials may not "condition provision of needed medical services on the inmate's ability or willingness to pay"); *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 704 (11th Cir.1985) (holding defendants' failure to secure medical care for plaintiff because he would not pay constituted claim for deliberate indifference) (citing *Archer v. Dutcher*, 733 F.2d 14, 17 (2d Cir.1984)).

■ The government must pay for medical care that it has a constitutional duty to provide, if that is the only way the care can be provided. *Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 245, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983).[3] The method by which the government obtains such treatment is not a federal constitutional question. *See id.* (noting city could obtain needed medical treatment by seeking it from hospital required to supply free care to indigents, by imposing on hospitals' and physicians' duty to treat the sick regardless of patient's ability to pay, or by operating its own hospital).

### A. Defendant Peck

■ Dr. Peck argues he did not act with the culpable state of mind necessary to be found liable under the Eighth Amendment, in that he had no discretion to give Benter the glasses after he was told not to do so by prison officials. Dr. Peck's "no discretion" argument assumes too much. He had other options open besides handing the glasses over to Benter. Dr. Peck could have informed prison officials that in his opinion Benter had a serious medical need for the glasses. Welder testified that had he known of Benter's serious medical need, he would have permitted Benter to receive the replacement glasses before paying for them, and worked out a payment schedule later. But Welder never inquired about Dr. Peck's diag-

3. *Revere* concerned a municipality's constitutional duty to obtain necessary medical care for a person injured by the municipality's police in performance of their duty. Because there was no formal adjudication of guilt against the plaintiff at the time he required medical care, the Due Process Clause rather than the Eighth Amendment applied. *Revere*, 463 U.S. at 244, 103 S.Ct. at 2983.

nosis to find out if Benter had a serious medical need. Dr. Peck testified that one reason he failed to provide the glasses was because Benter did not have enough money in his prison account to pay. Dr. Peck could have determined whether the policy offered any alternative payment plans, or he could have called the problem to the attention of Kemp, the warden or other prison officials.

Dr. Peck's contention that the prison's policy afforded him no discretion, even if true, would not absolve Dr. Peck of liability. Fundamental principles of fairness embodied in the Constitution require that government officials, both state and federal, be held liable for damages when they violate limits placed upon their conduct by the Constitution, even if they are acting pursuant to congressional authorization. *Butz v. Economou,* 438 U.S. 478, 495, 98 S.Ct. 2894, 2905, 57 L.Ed.2d 895 (1978); *see Little v. Barreme,* 6 U.S. (2 Cranch) 170, 179, 2 L.Ed. 243 (1804) (holding American warship commander liable for unlawfully seizing Danish brigantine, even though seizure was pursuant to superior's instructions). "If an order, or an invariable practice, is unconstitutional, acting in accordance with it is actionable under 42 U.S.C. § 1983." *Moody v. Proctor,* 986 F.2d

239, 242 (8th Cir.1993) (per curiam) (Arnold, J., dissenting).[4]

It is well established that an order or practice that constitutes deliberate indifference to serious medical needs is unconstitutional. *See Estelle,* 429 U.S. at 104, 97 S.Ct. at 291; *Boswell,* 849 F.2d at 1122. Furthermore, it is well established that withholding treatment for a serious medical need in order to compel payment constitutes deliberate indifference and is unconstitutional. *Revere,* 463 U.S. at 245, 103 S.Ct. at 2983; *Fields,* 734 F.2d at 1315. Therefore, acting in accordance with such unconstitutional orders or practices is actionable under § 1983. *Moody,* 986 F.2d at 242. Would Dr. Peck expect to avoid responsibility under § 1983 if, after diagnosing an inmate's serious eye disease, he failed to provide treatment because prison officials directed him not to provide treatment? As a licensed optometrist, Dr. Peck has greater discretion and responsibilities than does a rubber stamp.

A reasonable prison official would have provided treatment for Benter's serious medical need. Under the circumstances of this case, a reasonable prison official who is an optometrist would not have prescribed glass-

---

4. In the present case, the court notes the prison's policy is constitutional.

*Moody* held that the defendant correctional officers did not violate the plaintiff's Eighth Amendment rights when they inflicted physical pain and serious injuries to his wrists on several occasions by applying a "black box" restraining device over the chain and lock area of his handcuffs while transporting him to a hospital. *Id.* at 240. Prison policy, which the court held constitutional, required use of the black box; correctional officers did not have discretion to not use the box or adjust handcuffs after prisoners were en route. *Id.* at 241. *Moody* found the defendants did not purposely cause the inmate's pain, nor did defendants' conduct in applying the constitutional policy "display obduracy and wantonness." *Id.* In determining whether the policy of using the black box in itself amounted to cruel and unusual punishment, the court was persuaded by the Fifth Circuit's reasoning in *Fulford v. King,* 692 F.2d 11, 14 (5th Cir.1982). *Fulford* held a similar policy requiring prisoners to wear a black box over their handcuffs did not violate the Eighth Amendment even though the box inflicted some discomfort, because the box's use was penologically justified, and because the record did not show that prisoners were exposed to

severe pain, or that their discomfort was caused either deliberately, as punishment, or "mindlessly, with indifference to the prisoners' humanity." *Fulford,* 692 F.2d at 14–15. Furthermore, the box's use was "directed by a standard prison policy, not left to unfettered discretion of guards." *Id.* at 15.

Here, ISP's policy of requiring inmates to pay for replacement glasses unless their original glasses were damaged during "constructive participation in institution programs," is constitutional because the policy is penologically justified by economic and rehabilitative concerns, and the furnishing of glasses is "directed by a standard prison policy, not left to unfettered discretion." *See id.* Furthermore, Benter's discomfort was not caused either deliberately, as punishment, or "mindlessly with indifference" to his humanity as a result of the policy's provisions, but rather as a result of Defendants' conduct in applying the policy. *See id.* at 14–15. ISP's policy permitted exceptions to the general rule that inmates pay for replacement glasses. But Defendants' conduct in choosing not to make an exception to accommodate Benter's serious medical need displayed "obduracy and wantonness," which amounted to deliberate indifference to Benter's serious medical needs. *See Moody,* 986 F.2d at 241.

es and then withheld them, doing nothing more to provide a patient who had 20/400 vision with needed medical care. Dr. Peck knew of Benter's need for the glasses, but his intentional inaction prevented Benter from receiving the recommended treatment. The court realizes physicians are entitled to exercise their professional judgment in making *medical* decisions. *Taylor v. Turner,* 884 F.2d 1088, 1090 (8th Cir.1989). However, when Dr. Peck decided to defer to prison policy on payment for the glasses, he was attempting to abdicate his role and responsibilities as an optometrist. He was not exercising his professional judgment in making medical decisions when he decided to withhold Benter's glasses.

Dr. Peck's intentional refusal to provide needed care surpasses negligence and constitutes deliberate indifference. The court holds that in his application of the prison's policy, Dr. Peck was deliberately indifferent to Benter's serious medical need and thus violated the limits placed upon his conduct by the Eighth Amendment's proscription of cruel and unusual punishment.

### B. Defendants Welder and Kemp

 Defendants Welder and Kemp allege that because they had no knowledge of Benter's serious medical need for glasses, their conduct did not rise to the level of deliberate indifference. They overlook a step in forming this premise: A reasonable prison official in like circumstances would have investigated to determine the seriousness of Benter's need before withholding the glasses. They could easily have established the degree of Benter's medical need by asking Dr. Peck or simply reviewing the medical chart and seeing that Benter has 20/400 vision. The refusal to investigate prevented Benter from receiving recommended treatment. Their conduct surpassed negligence and constituted deliberate indifference.

 Defendants withheld Benter's glasses from him because he either did not have enough funds in his account to pay for the glasses, or would not authorize Defendants to take the funds when he had enough money in his account. Because Defendants took no steps to ensure Benter's serious medical needs were met, Defendants' actions violated the Constitution. Benter had a constitutional right to receive necessary medical treatment. If ISP could have provided the necessary glasses only by paying for them itself, then the institution was required to pay. *See Revere,* 463 U.S. at 245, 103 S.Ct. at 2983. Whether ISP could have provided the glasses by another method is a matter of state fiscal policy, not a constitutional issue. *See id.* at n. 7 ("Nothing we say here affects any right a … governmental entity may have to recover … the cost of the medical services provided").

 Defendants further argue that under prison policy Benter was financially liable for the glasses, because he was responsible for the altercation at Oakdale that resulted in broken glasses. Benter contends he was not responsible for damage to his glasses, because the glasses were broken when Oakdale correctional officers used excessive force on him. In spite of the substantial amount of testimony offered about how the glasses got broken, the court need not decide this issue, because the Constitution prohibits Defendants from withholding necessary treatment for non-medical reasons. *See Taylor,* 966 F.2d at 423; *Ancata,* 769 F.2d at 704; *Fields,* 734 F.2d at 1314–15.

The court questions the defendants' good faith in resolving this dispute and meeting Benter's medical needs. Even if Welder and Kemp did not understand the seriousness of Benter's need for glasses when they first received Benter's grievances and inmate memos in January 1992, surely when this complaint was filed in March 1992 the issues and needs were clear, or at least clear enough to have required Peck, Welder and Kemp to communicate.

Benter has established that Defendants each acted with the culpable state of mind necessary for his conduct to be regarded as cruel. Defendants were deliberately indifferent to Benter's serious medical need in violation of the Eighth Amendment.

### III. CAUSE IN FACT

 To establish a violation of constitutional rights under § 1983, a plaintiff must

also show that the defendants' unconstitutional actions were the cause in fact of most of the plaintiff's injuries. *Carey v. Piphus,* 435 U.S. 247, 263, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1978); *Butler v. Dowd,* 979 F.2d 661, 669 (8th Cir.1992). If the injury would have occurred without the defendants' conduct, the conduct was not the cause in fact of the injury. *Id.*

Benter proved that Defendants' unconstitutional action prevented him from receiving his glasses in December 1991 and thus was the cause in fact of his injury. Benter's injury would not have occurred but for Defendants' unconstitutional conduct in exhibiting deliberate indifference to his serious medical need. *See Butler,* 979 F.2d at 669.[5]

## IV. QUALIFIED IMMUNITY

A prisoner may sue a state official in his individual capacity under 42 U.S.C. § 1983 when the official acts under color of state law to deprive the inmate of rights guaranteed to him by the Constitution or by federal laws. *Brown v. Frey,* 889 F.2d 159, 164–65 (8th Cir.1989), *cert. denied,* 493 U.S. 1088, 110 S.Ct. 1156, 107 L.Ed.2d 1059 (1990). However, public officials are entitled to qualified immunity from civil damages when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Cross v. City of Des Moines,* 965 F.2d 629, 631 (8th Cir.1992).

Prison officials lose their qualified immunity if: (1) their conduct violates a constitutional right of the prisoner that was clearly established before the time of the officials' acts; (2) the officials knew or should have known of the clearly established right at the time of the violation; and (3) the officials knew or should have known that their conduct violated that right. *Cleavinger v. Saxner,* 474 U.S. 193, 207, 106 S.Ct. 496, 504, 88 L.Ed.2d 507 (1985); *Harlow,* 457 U.S.

at 818, 102 S.Ct. at 2738; *Brown,* 889 F.2d at 165; *cf. Siegert v. Gilley,* — U.S. —, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

The "clearly established" standard requires that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

Even if a plaintiff can show an official's conduct violated clearly established law, the qualified immunity defense should be sustained if the official shows extraordinary circumstances and proves he neither knew nor should have known of the applicable legal standard. *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2738; *Burk v. Beene,* 948 F.2d 489, 494 (8th Cir.1991).

Applying these principles to the case at hand, the court finds Defendants are not entitled to qualified immunity. At the time Defendants withheld Benter's glasses beginning in December 1991, Benter had a clearly established constitutional right to be free from deliberate indifference to his serious medical needs. *See Estelle,* 429 U.S. at 104, 97 S.Ct. at 291; *Boswell,* 849 F.2d at 1122.

Defendants withheld the replacement glasses in order to force Benter to pay for the glasses. The law in this circuit was clearly established in 1991: The withholding of treatment for a serious medical need in order to compel payment constitutes deliberate indifference in violation of the Eighth Amendment. *Fields,* 734 F.2d at 1315; *Revere,* 463 U.S. at 245, 103 S.Ct. at 2983.

The court finds Defendants' conduct violated a constitutional right of Benter's that was clearly established before Defendants withheld his glasses. Defendants knew or should have known of Benter's right during the 18 months they have withheld his glasses; and Defendants knew or should have known that their conduct violated that right. The fact that Benter has been as stubborn as Defen-

---

5. The court recognizes Benter has had enough money in his account at various times to pay the $12.40 cost for replacement glasses. However, Benter's ability to pay for the glasses does not absolve Defendants of liability for violating Benter's constitutional rights when they refused to provide and continued to withhold the glasses. *See Revere,* 463 U.S. at 245, 103 S.Ct. at 2983.

dants by refusing to pay $12.40 to get the glasses does not absolve Defendants from liability.

Defendants did not claim the existence of extraordinary circumstances. They failed to prove they neither knew nor should have known of the applicable legal standard.

For these reasons, the court finds that Defendants are not entitled to the defense of qualified immunity on this claim.

## V. DAMAGES

The basic purpose of a § 1983 damages award is to compensate persons for injuries caused by the deprivation of constitutional rights. *Wyatt v. Cole,* —— U.S. ——, ——, 112 S.Ct. 1827, 1830, 118 L.Ed.2d 504 (1992); *Smith v. Wade,* 461 U.S. 30, 34, 103 S.Ct. 1625, 1628, 75 L.Ed.2d 632 (1983); *Carey v. Piphus,* 435 U.S. 247, 254, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252 (1978). Section 1983's legislative history offers courts no specific guidance in calculating compensatory damages. *Smith,* 461 U.S. at 34, 103 S.Ct. at 1628. Considerations of equity, reason and pragmatism help the court arrive at a damage figure. *Lojeski v. Boandl,* 602 F.Supp. 918, 924 (E.D.Pa.1984); *Mack v. Johnson,* 430 F.Supp. 1139, 1150–51 (E.D.Pa.1977), *aff'd,* 582 F.2d 1275 (3d Cir.1978); *cf. Sample v. Diecks,* 885 F.2d 1099, 1112 (3d Cir.1989).

As a result of Defendants' refusal to provide Benter with replacement glasses, he was deprived of treatment for his serious medical need in violation of his constitutional rights. Benter is entitled to injunctive relief. However, because Benter could have easily paid for the glasses and mitigated his ongoing difficulties, the court finds that an award of nominal damages is sufficient. *See Cummings v. Malone,* 995 F.2d 817, 822–23 (8th Cir.1993); *Cowans v. Wyrick,* 862 F.2d 697, 699 (8th Cir.1988).

## CONCLUSION

"What we have here is a failure to communicate." [6]

This case clearly shows how dysfunctional the grievance system is at ISP. For the past 18 months an inmate, who is legally blind without his glasses, has not had these glasses. In response to his grievances, prison officials cite a regulation that would allow them to provide the glasses, if only they were aware of his serious medical need for them. Plaintiff, who could afford to pay for the glasses, refuses to do so in the belief the institution should treat his serious medical need at its cost. He presents this as a constitutional claim to this court. Now the prison officials react in answer to the Complaint, still parroting the policy rather than attempting to resolve the dispute. Once again the court serves as a vehicle for the parties to share information, which of course they do not act upon because now litigation is pending, and it is easier to let the court solve the problem.

As a result, in the course of the parties' haggling over this $12.40 pair of glasses, thousands of dollars of corporate, state, and federal resources are expended. This certainly is not the speedy, just and inexpensive dispute resolution envisioned by the drafters of 42 U.S.C. § 1997e and the Federal Rules of Civil Procedure. Prison officials refuse to break out of the litigation lockstep being used as a supplement to the existing grievance system, and prisoners readily turn to elaborate court proceedings rather than mitigating their damages. The court continues to be "dealt in" to daily prison management when cases such as this are not resolved by common sense.

While it should make sense for the court to defer to prison administration, court intervention is clearly needed when obduracy and mindless recitation of policy are all that either party brings to the table. With attitudes like this, it is no wonder that prisoner § 1983 cases comprise over 40 percent of this district's civil docket. Again, as it has in previous cases, the court urges prison officials to implement, and prisoners to use, an effective grievance system. If all parties would cooperate in addressing concerns raised, perhaps litigation would not be viewed as the only option open for institutional dispute resolution. If even one case

---

**6.** Donn Pearce, *Cool Hand Luke,* screenplay (1967).

such as this does not have to be tried, it will be well worth the effort.

The court finds that Defendants acted with deliberate indifference to Benter's serious medical needs in violation of the Eighth Amendment by withholding his glasses in order to compel him to pay for them. Defendants are not entitled to qualified immunity from money damages.

Judgment is entered in favor of Plaintiff in the amount of $1.00, with costs assessed to Defendants. Injunctive relief is granted in the form of immediate delivery to Plaintiff of his prescription glasses.

IT IS SO ORDERED.