**Lester MARTIN, Plaintiff,**

v.

**H. Christian DEBRUYN, et al., Defendants.**

**No. 93–CV–598.**

United States District Court, N.D. Indiana, South Bend Division.

March 14, 1995.

Lester Martin, Michigan City, IN, pro se.

David L. Steiner, Office of Indiana Atty. Gen., Indianapolis, IN, for defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

Plaintiff Lester Martin filed this action pursuant to 42 U.S.C. § 1983 seeking damages and injunctive relief. The defendants are Indiana Department of Correction ("IDOC") Commissioner H. Christian De-Bruyn, and nine officials of the IDOC or Indiana State Prison ("ISP"). Mr. Martin moved for summary judgment; the defendants have responded. For the reasons that follow, the court denies the plaintiff's summary judgment motion.

On May 17, 1993, Commissioner DeBruyn issued an executive directive and defendant W. Dean Neitzke, IDOC Director of Health Care Services, issued a Health Care Services Directive dealing with changes in the method of dispensing over-the-counter ("OTC") medications. Copies of the directives are attached to the complaint. Mr. Martin asserts that the defendants have generated other documents addressing this policy, but these documents have not been submitted to the court.

The two directives provide that beginning June 15, 1993, inmates would not be allowed to use sick call "to obtain over-the-counter medication used for cosmetic, general hygiene, general comfort, or convenience purposes." (executive directive, p. 1). Instead, a variety of OTC medications were to be carried on the commissary and sold to inmates at cost.

The directives specifically provide for an exception to the policy where an inmate "can use an over-the-counter medication as part of a necessary treatment regimen for a serious medical condition or when an offender is an inpatient. In these circumstances the DOC will provide the necessary medication." (executive directive, p. 1). The defendants acknowledged that "(w)e must provide health care services necessary to treat serious medical conditions," (health care directive at p. 1), and listed "some 'serious' medical needs for which nursing staff may still provide OTC preparations." (health care directive at p. 3).

Mr. Martin alleges that he has a history of painful ulcers, and had been receiving treatment for this condition at the ISP. On June 15, 1993, Mr. Martin went on sick call and requested medication for his ulcers. He was told that although he met the IDOC indigence requirements, he could not receive the over-the-counter medication that was part of

his ulcer treatment. Mr. Martin was told that he would have to purchase antacid (miacid II) and Acetaminophen (MAPAP) from the commissary. These medications were to be used in conjunction with prescription medication.

Dr. Jose LaBayo, a non-defendant, wrote a prescription indicating that Mr. Martin should receive the medication as soon as possible. Mr. Martin informed his counselor, also a non-defendant, who allegedly called defendants L. Daniels and Stu Miller at the business office. Martin filled out the necessary commissary slip on June 22, 1993, but was not allowed to get the medication until June 30, 1993. He alleges that the delay was caused by a funding shortage, and that it caused unnecessary suffering.

The party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent.

The parties cannot rest on mere allegations in the pleadings, or upon conclusory allegations in affidavits. The court must construe the facts as favorably to the non-moving party as the record will permit, and draw any permissible inferences from the materials before it in favor of the non-moving party, as long as the inferences are reasonable. The non-moving party must show that the disputed fact is material, or outcome determinative, under applicable law.

*Conery v. Bath Associates*, 803 F.Supp. 1388, 1392–93 (N.D.Ind.1992) (citations omitted).

▆▆▆▆ Mr. Martin alleges that the OTC medication policy violates his rights under the Eighth Amendment, which is made applicable to the states through the Fourteenth Amendment. A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan*, —— U.S. ——, ——, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994); *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). In medical cases, this test is expressed in terms of whether there was deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Inadvertent failure to provide medical care or negligence in treating a medical condition do not constitute an Eighth Amendment violation. *Estelle*, 429 U.S. at 106–107, 97 S.Ct. at 292-93.

The Constitution requires that prison officials establish medical facilities for prisoners, and provide prisoners with medical assistance. *Wellman v. Faulkner*, 715 F.2d 269 (7th Cir.1983). "When a state imposes imprisonment as a punishment for crime, it accepts the obligation to provide persons in its custody with a medical care system that meets minimal standards of adequacy." *Wellman*, 715 F.2d at 271.

▆▆ Mr. Martin asserts that IDOC policy requires that indigent inmates receive free OTC medication for treatment of serious medical needs, and that the defendants violated their own policy by requiring him to purchase OTC medication prescribed as part of his treatment for ulcers. The materials before the court do not establish that indigence is the key to free OTC medication under the IDOC policy.[1] Under the health care services directive, the existence of a serious need determines whether inmates receive free OTC medications. Inmates with a serious medical condition and OTC medication prescribed by a physician as part of the treatment are to receive them for free; all others are not. In any event, allegations that the defendants are not following their

---

1. The health care services directive states, "(i)ndigence may present a difficulty to some offenders in obtaining these medications; however, health care staff will not address this issue."

own policy state no claim upon which relief can be granted. Under 42. U.S.C. § 1983, the proper inquiry is whether there has been a violation of the federal constitution or laws by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988); *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984).

Mr. Martin asserts that he had a serious medical need and that the IDOC policy, and the defendants' actions pursuant to the policy amounted to deliberate indifference to his needs. The questions before the court are whether Mr. Martin has a serious medical need within the meaning of *Estelle v. Gamble;* if so, whether the constitution entitles him to free OTC free medication to help treat that condition; and whether the materials before the court establish that the defendants' policy, and the implementation of that policy in Mr. Martin's case, constitutes deliberate indifference his serious medical needs.

■ In regard to the question of what constitutes a serious medical need, the list of "serious" medical problems formulated by the IDOC does not include ulcers, and Mr. Martin presumably was not entitled to free OTC medications under the policy directives that are presently before the court.[2] But the policy of deferring to the judgment of prison officials does not apply in the context of medical care to the same degree as other contexts. *Wellman v. Faulkner*, 715 F.2d at 272. Courts determine what constitutes a serious medical need on a case-by-case basis. As a general rule, a serious medical need is one that a physician has diagnosed as mandating treatment or one which is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Laaman v. Helgemoe*, 437 F.Supp. 269 (D.C.N.H. 1977).

Mr. Martin asserts that Dr. LaBayo has identified his ulcer condition as one requiring treatment, and prescribed OTC medications as part of the treatment process. Courts have identified ulcers as constituting a serious medical need within the meaning of *Es-*

telle v. Gamble, because if left untreated, ulcers may cause intense and persistent pain and may require emergency surgical intervention. *Coades v. Jeffes*, 822 F.Supp. 1189, 1192 (E.D.Pa.1993); *see also Westlake v. Lucas*, 537 F.2d 857 (6th Cir.1976). The defendants do not contest that Mr. Martin had an ulcer, or that he required the OTC medication as part of the treatment for his ulcer.

■ Once a serious medical need has been identified, the Eighth Amendment prohibits deliberate indifference to that need. In *Benter v. Peck*, 825 F.Supp. 1411 (S.D.Iowa 1993), a district court held that a State is required to provide treatment for a serious medical need, and that the State, not the inmate, is responsible for paying for medical care the State has a constitutional duty to provide. *Benter* involved an inmate who was legally blind without his glasses which had been broken during an altercation with guards. Prison officials refused to replace Benter's broken glasses until he agreed to pay for them; Benter had sufficient funds in his account, but refused to pay for the glasses, maintaining that was the state's responsibility to pay for them. The court held the prison officials violated Benter's rights by refusing to provide him with glasses, granted him injunctive relief, and awarded only nominal damages because Benter could have paid for the glasses and mitigated his ongoing difficulties. *Benter*, 825 F.Supp. at 1421.

The court respectfully disagrees with the reasoning of *Benter*. Nothing in the Eighth Amendment, which prohibits certain punishment, requires a state to provide an inmate, free of charge, with a necessary commodity that would not be free outside the prison walls and which the inmate has the legal means to obtain.

■ These qualifications are important. Incarceration prevents a person from seeking medical treatment of his own choosing, so prisons must provide inmates with a minimal degree of medical care for serious medical needs; the failure to do so amounts to "punishment"—a penalty for a crime beyond that

---

2. The IDOC health care directive acknowledges a duty to provide inmates OTC medications to deal with serious medical needs, and lists the serious

medical needs identified by the IDOC. The list before the court does not include ulcers.

prescribed by the law that produced the inmate's incarceration.

An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical 'torture or a lingering death,' the evils of most immediate concern to the drafters of the Amendment. In less serious cases, denial of medical care may result in pain and suffering, which no one suggests would serve any penological purpose. The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common-law view that 'it is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself.'

*Estelle v. Gamble*, 429 U.S. at 103–104, 97 S.Ct. at 290–91. But this principle does not forbid a state from requiring that an inmate pay for his medical treatment to the extent he is able to do so, as he would have to do were he not deprived of his liberty. The Eighth Amendment guarantees only that states will not ignore an inmate's serious medical needs; it does not guarantee free medical care.

A prison official who withholds necessary medical care, for want of payment, from an inmate who could not pay would violate the inmate's constitutional rights if the inmate's medical needs were serious, because refusal to act pending the impossible is no different from refusing without qualification. But insisting that an inmate with sufficient funds use those funds to pay for medical care is neither deliberate indifference nor punishment.

The contrary result reached in *Benter* turned on the court's statement that, "it is well established that withholding treatment for a serious medical need in order to compel payment constitutes deliberate indifference and is unconstitutional." 825 F.Supp. at

1418.[3] The sole authority cited for that proposition, however, was *Revere v. Massachusetts General Hospital*, 463 U.S. 239, 245, 103 S.Ct. 2979, 2983–84, 77 L.Ed.2d 605 (1983), which case provides no authority for such a proposition. *Revere* involved a suit between a police department that had presented a prisoner for treatment and the hospital that had provided the treatment. The Court held only that the federal constitution did not make the police department liable for the ensuing bill. Indeed, the Court went out of its way to avoid implying the holding attributed to it in *Benter*: "Nothing we say here affects any right a hospital or governmental entity may have to recover from a detainee the cost of the medical services provided to him." 463 U.S. at 245 n. 7, 103 S.Ct. at 2984 n. 7.

■ Accordingly, the court concludes that a prison official violates the Eighth Amendment by refusing to provide prescribed OTC medicine for a serious medical need only if the inmates lacks sufficient resources to pay for the medicine. If the inmate can afford the medicine but chooses to apply his resources elsewhere, it is the inmate, and not the prison official, who is indifferent to serious medical needs.

■ Under this standard, neither Mr. Martin nor the defendants are entitled to summary judgment on the record before the court. The attachments to the complaint, which may be considered for summary judgment purposes, indicate that OTC medications prescribed for Mr. Martin cost $3.15 on June 22. Mr. Martin's complaint states that he had $3.57 in his prison account that day—a sum that might or might not be adequate to purchase the drugs, depending on the other purchases Mr. Martin might be required to make from that account—but the defendants denied that allegation and a plaintiff may not rest upon contested allegations in the complaint in support of a summary judgment motion. Mr. Martin does not

---

**3.** The *Benter* court also stated that, "Delay in medical treatment of a serious medical need cannot be justified as a means to compel payment," 825 F.Supp. at 1417 (S.D.Iowa 1993), citing *Fields v. Gander*, 734 F.2d 1313, 1314–1315 (8th Cir.1984), *Monmouth County Corr. Inst. Inmates*

*v. Lanzaro*, 834 F.2d 326, 347 (3rd Cir.1987), and *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 704 (11th Cir.1985). The case now before the court does not, however, involve an attempt by the state to collect an earlier debt for medical treatment.

allege that he ever has been unable to pay for prescribed OTC medicine; he alleges only that he is indigent by IDOC standards, but a state regulation does not define who is indigent for federal constitutional purposes. It is undisputed that Mr. Martin eventually obtained the prescribed medicine, some eight days later.

The record does not disclose whether the IDOC allows an inmate to debit his account to pay for present purchases from future deposits. If Mr. Martin could have paid or arranged to pay for the prescribed medicine but simply chose not to pay for it, no defendant would be liable. If, on the other hand, one or more prison officials refused to provide Mr. Martin with prescribed medicine—OTC or otherwise—for his serious medical needs at a time Mr. Martin could not pay for the prescribed medicine, those officials would be liable to Mr. Martin for the constitutional violation, even if Mr. Martin later acquired the means to pay, and so acquired the medicine. Under such circumstances, Mr. Martin's acquisition of the means to pay would have terminated the constitutional violation, but would not relieve the defendants from liability for Mr. Martin's increased pain from lack of the medicine in the interim. These issues cannot be resolved on this record.

 Other issues remain. A § 1983 plaintiff seeking damages must always establish a defendant's direct personal involvement, or participation, or direct responsibility for the conditions of which he complains. *Rascon v. Hardiman,* 803 F.2d 269, 273 (7th Cir.1986); *Wolf–Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir.1983). To establish deliberate indifference by a defendant to his serious medical needs, Mr. Martin must show that the defendant acted with the culpable state of mind necessary for the punishment to be regarded as cruel. *See Wilson v. Seiter,* 501 U.S. at 298–99, 111 S.Ct. at 2324; *McGill v. Duckworth,* 944 F.2d 344 (7th Cir.1991).

Mr. Martin sued ten defendants, but most of them are not mentioned at all in the body of the complaint or in any of the materials subsequently submitted by Mr. Martin. The directives attached to the complaint establish that defendants DeBruyn and Neitzke established the overall policy, but Mr. Martin has not established the personal involvement of any defendant in any action beyond that point.

In regard to injunctive relief, the materials before the court establish that the IDOC policy, as formulated in 1993, recognizes the state's duty to provide health care services, including OTC medications, necessary to treat serious medical conditions at no cost to the inmate. (health care directive at p. 3). This general policy comports with Constitutional requirements. The problem is that, based on the materials before the court, the IDOC appears to have established an inelastic list of conditions which it considers "serious medical needs," while the definition of such a need is necessarily elastic.[4]

The directives before the court are those used to establish the policy initially, and the parties refer to subsequent documents that may refine the policy. The later documents are not presently before the court. The court is reluctant to rule on the request for injunctive relief on the record now before the court.

Mr. Martin has established some of the elements necessary to obtain summary judgment, but when the facts are construed favorably to the non-moving party and the defendants are given the benefit of inferences to which they are entitled, *Conery v. Bath Associates,* 803 F.Supp. at 1392–93, the court must decline to enter summary judgment at this time. The court has established a scheduling order, and the parties may, of course, file additional dispositive motions expanding the record and addressing the issues left unresolved in this summary judgment motion.

The parties may also wish to review the portion of the *Benter* decision marked "CONCLUSION." *Benter,* 825 F.Supp. 1411 at 1421–22. The court's duty is to resolve is-

---

4. A serious medical need has been defined by the courts as one which has been diagnosed by a physician as mandating treatment or one which is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Laaman v. Helgemoe,* 437 F.Supp. 269 (D.C.N.H. 1977).

sues the parties are not able to resolve themselves, but the courts need only "be 'dealt in' to daily prison management when cases such as this are not resolved by common sense." *Benter*, 825 F.Supp. 1411 at 1421. This is a dispute of constitutional magnitude about the payment of less than four dollars for medicine. Regardless of whether the directives at issue ultimately are found to have violated anyone's constitutional rights, the defendants' approach has produced a colorable constitutional claim costing the state and federal taxpayers thousands more than the cost of that medicine. One wonders at the role of common sense in all this.

For the foregoing reasons, the court DENIES the plaintiff's motion for summary judgment (docket # 27).

SO ORDERED.